Arndt, et ux. *v.* Central Cambria School District.

Argued November 2, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*T. Dean Lower*, for appellants.

*Lawrence L. Davis*, for appellee.

OPINION BY JUDGE KRAMER, December 19, 1972:

This is an eminent domain case. It involves an appeal from an order of the Court of Common Pleas of Cambria County, refusing to grant a new trial to the property owners, William Arndt and Blanche Fogel Arndt (condemnees), and directing the entry of judgment in favor of the condemnees on the jury verdict in the amount of $65,100 against the Central Cambria School District (condemnor).

In 1943 the condemnees purchased the farm property in question, consisting of approximately 127 acres of land, for the investment purpose of selling "it off in parcels as the need arose." Prior to 1968, condemnees had sold several parcels to third parties so that at the time pertinent to this case, they retained ownership to 117.79 acres. In or before the year 1968, the con-

demnor, being in need of land for the construction of a new school facility, commenced negotiations with the condemnees for the purchase of the subject land. After negotiations, which included a clear disclosure by the condemnor of the possibility of condemnation if a sales agreement was not entered into, the parties hereto, on March 18, 1968, entered into an agreement to sell. The agreement was an option contract which provided for consideration in the amount of $60,000 for the condemnees' land, reserving, however, to the condemnees a parcel of land "approximately 14 acres located in line along the easterly side of said tract." The agreement also provided that a deed with a "marketable warranty" would be delivered within sixty days of the receipt by the condemnees of notice of the condemnor's intention to exercise its option under the agreement. It also provided for the payment of $1,000 for the exclusive option contained in the agreement to be paid by the condemnor to the condemnees and for the removal by condemnees of a dwelling house located on the property within sixty days after notice from the condemnor, and left in the condemnees the right to remove certain timber that might be designated by the condemnor. On December 20, 1968, the condemnor notified the condemnees of its intention to exercise its option. Thereafter, the condemnees, having been informed that they did not have a marketable title, instituted an action to perfect their title which was completed in June of 1969. The record is clear that the condemnees did not offer a deed in compliance with the provisions of the option agreement.

Thereafter, upon deciding that it needed the *entire* tract of land owned by the condemnees for school purposes, and without further notice to the condemnees, the condemnor filed its declaration of taking on October 6, 1969 for the *entire* tract of land. On February

18, 1970, the Court of Common Pleas appointed a Board of Viewers, which Board held hearings, after which, on July 27, 1970, it filed its report awarding to the condemnees the sum of $65,000 as compensation for damages suffered by virtue of the condemnation. Condemnees filed an appeal to the court below which conducted a jury trial. On January 19, 1971, the jury found for the condemnees in the amount of $65,100. Condemnees then moved for a new trial, which motion, after argument, was refused as hereinbefore stated by the lower court's order of December 29, 1971. Hence this appeal.

Before passing upon the several issues raised by the condemnees we note that our scope of review has been set forth in two recent opinions, *Felix v. Baldwin-Whitehall School District*, 5 Pa. Commonwealth Ct. 183, 289 A. 2d 788 (1972), and *Lewis v. Urban Redevelopment Authority of Pittsburgh*, 5 Pa. Commonwealth Ct. 176, 289 A. 2d 774 (1972). In those cases we noted that a motion for a new trial is addressed to the discretion of the trial court based upon the circumstances of the particular case and the lower court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law. *See also D'Alfonso v. Department of Transportation*, 5 Pa. Commonwealth Ct. 341, 291 A. 2d 117 (1972).

The first, and perhaps the most important issue raised by the condemnees is that the lower court committed reversible error in refusing to permit the jury to receive as evidence (and the testimony pertaining thereto), the agreement of sale between the condemnor and condemnees, which had been entered into prior to the filing of the declaration of taking in this case. It is important to note that the Board of Viewers, however, did receive this agreement and did take it into

consideration in arriving at its award. At the very beginning of the trial, counsel for the condemnor raised a question concerning the admissibility of the sales agreement. After a side bar conference, the jury was dismissed for the day, and the lower court, quite properly, held a separate hearing, wherein witnesses were called and evidence received. The court thereafter made a ruling that the sales agreement and any testimony pertaining to it were not admissible for the use of the jury. The sales agreement was marked as an exhibit and made a part of the record for appeal purposes only.

As we noted in the case of *Lewis v. Urban Redevelopment Authority of Pittsburgh, supra*: "The admissibility of such evidence is within the discretion of the trial court and should not be disturbed unless such discretion was grossly abused. B & K, Inc. v. Commonwealth, 398 Pa. 518, 159 A. 2d 206 (1960)." 5 Pa. Commonwealth Ct. at 180, 289 A. 2d at 776.

The condemnees contend, however, that the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, Art. VII, Section 705, 26 P.S. §1-705, provides for the admission of agreements such as the one here in question. That section of the Code states:

"Whether at the hearing before viewers, or at the trial in court on appeal:

. . . .

"(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:

"(i) The price and any other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation."

The condemnees' contention must fail for several reasons. First, Section 602 of the Code, 26 P.S. §1-602, states: "Just compensation shall consist of the difference between the fair market value of the condemnees' entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as effected thereby, and such other as are provided in this code."

Next in Section 603, 26 P.S. §1-603, fair market value is defined as:

"Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors:

"(1) The present use of the property and its value for such use.

"(2) The highest and best reasonable available use of the property and its value for such use.

"(3) . . . .

"(4) Other factors as to which evidence may be offered as provided by Article VII."

Section 604 of the Code, 26 P.S. §1-604, provides that any change in the fair market value due to general knowledge of the imminence of condemnation shall be disregarded. In this case the trial judge took great pain in providing for a special hearing, absent the jury, to determine whether the facts surrounding the proposed piece of evidence (the sales agreement) had any relevancy as to indicate a true reflection of market value. After hearing this testimony, the court ruled that the sales agreement did not constitute a true reflection. We have reviewed this testimony very carefully and cannot find any abuse of discretion on the part of the trial judge.

Secondly, although the condemnees might analogize the facts of this case to the fact situation presented before our Supreme Court in *Berger v. Public Parking Authority of Pittsburgh,* 380 Pa. 19, 109 A. 2d 709 (1954), there is a glaring distinguishing fact. In the *Berger* case, the sales agreement provided for the sale of the exact same property which was being condemned. By further analogy, we note that, in *Berkley v. Jeannette,* 373 Pa. 376, 96 A. 2d 118 (1953), the court pointed out that the trial court must weigh the "peculiar facts" of the case and noted that the evidence pertaining to the price offered or paid for the property must be for the "integrated whole." The court stated: "It is not only possible, but probable, that each of the constituent lots took on an increased value upon its being merged with the other which was forthwith to be reflected in the value of the properties as a whole. If anything, testimony as to the several purchase prices would have been confusing rather than justly impeaching. . . ." 373 Pa. at 381, 96 A. 2d at 121. In view of the fact that the proffered sales agreement in this case was for only a portion of the property being condemned, the court quite properly ruled it inadmissible. The courts in these cases have been very careful not to permit evidence which raises collateral issues which may confuse the jury or unreasonably complicate the case. We hasten to point out that we do not conclude that the sales agreement was too remote in time. We do conclude that since the parties did negotiate with the thought of condemnation in mind, and since the negotiated transaction did not provide for the same property which was ultimately condemned, the trial court did not abuse its discretion or commit an error of law in ruling that this sales agreement was not admissible. As was stated in the case of *Scavo v. Commonwealth of Pennsylvania Department of Highways,*

439 Pa. 233, 266 A. 2d 759 (1970) : "The Eminent Domain Code, §705(1), states that 'a qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion. . . .' This, however, must be subject to the limitation that neither an expert witness nor the condemnee . . . can testify to facts and data which are not judicially relevant and competent." 439 Pa. at 239, 266 A. 2d at 762. Furthermore, Mr. Justice POMEROY in a concurring opinion in the case of *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority,* 435 Pa. 344, 253 A. 2d 260 (1969), stated: "Sales to a condemnor of properties which it could, and if necessary would, acquire by condemnation are not, in my judgment, sales on the open market between a willing seller and a willing buyer. They involve an ingredient of compulsion on the part of the seller that *might* make the 'sales price' too low; there may be an ingredient of anxiety for speedy acquisition or some other factor operating in the mind of the authority which would place the 'sales price' on the high side of fair market value. The fact is that the parties are not only buying and selling real estate; they are also settling a potential law suit, with all of the elements of time, trouble, expense, and worry that would be involved. The properties may indeed be comparable, but for one reason or another the transactions may not be, and the so-called 'sales price' may be higher or lower than if no condemnation were involved. To admit such testimony would be to invite side excursions into all other related factors; such collateral matters would unduly complicate and delay the trial." (Emphasis in original.) 435 Pa. at 349-350, 253 A. 2d at 262.

Next the condemnees contend that the lower court committed reversible error by instructing the jury to disregard all of the evidence in the record pertaining

to the possibility of gas and oil discoveries on the condemnees' premises, and also the possible relocation of a major highway through or near the property. Condemnees likewise contend that the court erroneously disregarded testimony of the condemnee wife concerning her information on abandoned coal mines and land faults. We have carefully reviewed all of this record with reference to these three contentions of the condemnees, and we find them all to be without merit. We can find no support for condemnees' contention that pure speculation can ever be used by the jury to determine the fair market value. Condemnees did not offer any reliable testimony or evidence concerning these three possibilities. None of the experts who testified in this case utilized these possibilities in arriving at their estimated market value. We conclude that there was no reversible error in the lower court's ruling on these three matters.

Condemnees also contend that the court below improperly permitted the condemnor's expert witness to use comparable sales of land in the general area which the condemnees argued were not comparable. We have reviewed the record and conclude that the trial court properly permitted the testimony on comparable sales by the condemnor's expert witness. *See Commonwealth v. 108.3 Acres of Land,* 431 Pa. 341, 246 A. 2d 124 (1968), and *North Side Deposit Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 274, 274 A. 2d 215 (1971). The Code at Section 705, 26 P.S. §1-705, quoted above, does not set forth any specific criteria for what is "comparable." This section merely restricts the evidence to comparable property sold within "a reasonable time before or after the date of condemnation." The trial judge here determined that the comparable sales referred to by the expert witness were "judicially comparable." *See Com-*

*monwealth v. 108.3 Acres of Land, supra.* This was a discretionary matter with the judge and unless there is a manifest and palpable abuse of discretion, the trial judge should be upheld. We find no such abuse of discretion in this case.

The last issue raised by the condemnees is that the award of the jury was inadequate, unjust and against the law. In reviewing the record we find that the condemnee wife and their real estate appraisal expert both testified that in their opinion the fair market value of the condemnees' property was $100,000. The condemnor's experts testified to a value of $32,860. All of the expert witnesses used the comparable sales approach inasmuch as the other two available approaches (viz., the cost approach and the capitalization approach) were not appropriate under the facts of this case. The jury award in the amount of $65,100 falls in between. As we have already noted, although the jury did not have the use of the sales agreement in determining its award, the Board of Viewers did utilize that document in arriving at their award, which was just $100 less than the jury award. As we noted in the case of *Wolfe v. Redevelopment Authority of the City of Johnstown,* 1 Pa. Commonwealth Ct. 172, 273 A. 2d 923 (1971), while the award of the Board of Viewers is an important aspect to be considered when a new trial is requested on the basis of inadequacy or excessiveness of the jury's verdict, it is not controlling. It is likewise interesting to note that the jury's verdict is $5,100 more than the consideration mentioned in the sales agreement, upon which the condemnees place so much reliance. Taking this entire record into account for the purpose of determining whether or not the jury's verdict is adequate, we find no basis upon which we could conclude that the verdict is not legally sustainable. Our Supreme Court in the case of *Vaughn v.*

*Commonwealth,* 407 Pa. 189, 180 A. 2d 12 (1962), stated: "An appellate court will not interfere with the judgment of the lower court in a condemnation case, unless it feels that the verdict was so excessive or inadequate that the refusal of the court below to grant a new trial was a clear and manifest abuse of discretion, or was unconscionable and shocking to the appellate court's sense of justice." 407 Pa. at 191, 180 A. 2d at 13. The verdict in this case, based upon this entire record, was reasonable. We are further impressed with the fact that the judge and jury viewed this property, as provided for in the Code, 26 P.S. §1-703. The jury, therefore, not only had the testimony of the condemnees and the real estate experts, but in addition had the advantage of its own view of the property in arriving at a verdict. This factor must also be given considerable weight by an appellate court. *See Commonwealth v. 108.3 Acres of Land, supra.* We are satisfied that the jury's verdict was supported by the weight of the evidence and is not excessive.

The order of the court below is affirmed.