In Re: Condemnation of a Tract of Land Being Part of Hatfield Park, Plate No. 3, Situate in Hatfield Township, Montgomery County, Pennsylvania, by Hatfield Township for Park Purposes.

Alfred O. Breinig, Grace Building Co., Inc., Suburban Building Materials Co., Inc., Curtis Building Co., Inc., Barbara Breinig, Carol Breinig and Charles Breinig, Appellants *v.* Hatfield Township, Appellee.

Grace Building Co., Inc., Appellant *v.* Hatfield Township, Appellee.

Suburban Building Materials Co., Inc., Appellant *v.* Hatfield Township, Appellee.

Curtis Building Co., Inc., Appellant *v.* Hatfield Township, Appellee.

Barbara Breinig, Appellant *v.* Hatfield Township, Appellee.

Charles Breinig, Appellant *v.* Hatfield Township, Appellee.

Carol Breinig, Appellant *v.* Hatfield Township, Appellee.

Argued October 6, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Alfred O. Breinig, Jr.,* for appellants.

*George Willner,* with him *Pearlstine, Salkin, Hardiman & Robinson,* for appellee.

OPINION BY JUDGE KRAMER, February 17, 1976:

This is an appeal by the appellants named in the above captions from an order of the Court of Common Pleas of Montgomery County awarding damages to the appellants in the total amount of $12,050 for the taking of 58 lots by Hatfield Township for public park purposes. The appellants have raised 13 different issues alleging reversible error by the trial court. We conclude there was no reversible error, and, therefore, affirm.

On August 9, 1965, a tract of land consisting of 21.063 acres of unimproved, undeveloped land was condemned through the filing of a declaration of taking. The entire tract comprised some 327 lots, each approximately 20 feet wide by 110 feet long. The appellants owned 58 of the lots in the respective numbers set forth in the court's order. The entire tract is zoned R-75, single-family residential, which requires a minimum lot size of 11,250 square feet, a lot frontage of not less than 75 feet on a public street, and side yards of not less than 12 feet in width. None of the individual lots meet these requirements. The ordinance does make a provision for the granting of special exceptions to nonconforming lots which had been held in single and separate ownership since a time prior to the enactment of the zoning ordinance. All of the appellants are either members of the Breinig family or are corporations owned by members of that family. The 58 lots are located in scattered groups throughout the entire condemned tract. Some of the groupings are titled in one named appellant; others are titled in a mixture of named appellants. None of the groups of adjoining lots as individually titled in any one of the appellants meets the minimum area requirements of the zoning ordinance in an R-75 district.

The matter was consolidated for hearing, and a Board of View awarded a total of $2,815 for the various lots of the appellants, together with other awards which are not matters of our concern in this appeal. The appellants

appealed to the trial court, and after four days of hearing, the court, on January 9, 1974, issued an order awarding a total of $12,050 to the appellants for the taking of their 58 lots. Appellants filed exceptions which were argued before the court en banc and dismissed by an order dated December 6, 1974. Appellants then appealed to this Court, after which, on April 25, 1975, the trial court issued its opinion in support of its order.

In an appeal from a final order of a court of common pleas in an eminent domain case, our scope of review is to determine whether the trial court abused its discretion or committed an error of law.[1]

The appellants charge that the trial court erred in not honoring their request for recusation by the trial judge. Their motion was based upon the fact that the trial judge at the time of the opening of the trial in this case received for his approval a settlement between the Township and another substantial landowner within the condemned tract. The appellants contend that such a settlement gave the trial judge information which worked to the prejudice of the appellants. The matter was raised at the beginning of the trial, and the trial judge refused the motion. Without more than the bare allegation of possible prejudice, we cannot hold that his refusal to disqualify himself was prejudicial per se. Judges often are called upon to settle cases with similar issues and facts. At times a judge must decide cases involving identical facts but different parties. Certainly in those counties where there is but one trial judge, this could be a common occurrence.

The appellants next argue that the trial judge committed error in not permitting the appellants to challenge and rebut the qualification of the Township's expert valuation witness through a showing that that witness, contrary to his testimony of independence and impartial-

---

1. *Patterson v. County of Allegheny,* 15 Pa. Commonwealth Ct. 228, 225 A.2d 484 (1974).

ity, was actually a full time employe of another condemnor, viz., the Pennsylvania Department of Transportation. We have carefully read the record and conclude that the trial judge was correct in his observation that the alleged conflict in testimony was in reality a misunderstanding by the witness of his civil service employe's status at the time he made his valuation of the lots in question.

Next, appellants claim the trial judge erred in refusing to hear the qualifications of their expert valuation witness. The record indicates that counsel for the Township condemnor stipulated to the expert qualifications of the appellants' witness, and the trial judge stated his knowledge of the qualifications of the witness. In view of the fact that the appellants did not demand a jury trial, and the matter was being heard *de novo* before the judge sitting without a jury, there was no need for the additional qualification testimony of appellants' witness.

The appellants charge that the trial judge erred by excluding evidence pertaining to the zoning applicable to the various lots, the appellants' allegations on obtaining variances and special exceptions, the availability of public sewers, access to the lots by paved streets, and common management of the appellants' holdings. We have carefully read this entire record and can find no reversible error. The task of the trial judge was to receive pertinent testimony and evidence which would assist him in determining just compensation for the taking of appellants' property. Whether the appellants would have joined together in the sale or development of adjoining lots, and whether the Township would have granted them a variance or a special exception were matters of speculation, and it would have been improper for the trial judge to use such speculation in arriving at just compensation.[2] The trial judge likewise did not commit any error

2. *Stoner v. Metropolitan Edison Company*, 439 Pa. 333, 266 A.2d 718 (1970); *Arndt v. Central Cambria School District*, 7 Pa. Commonwealth Ct. 150, 298 A.2d 682 (1972).

by finding that sewers were not available to the lots in question. At the time of the taking, a sewer construction project in the vicinity of these lots had been commenced but not completed. The critical time is the date of the taking, and under the facts of this case, none of the streets had been installed within the tract condemned, and no sewers or water lines were available to the property owners.

Appellants complain that the trial judge erred in his rulings on certain of both the condemnor's and appellants' valuation witnesses on comparable sales. Section 705(2) of the Eminent Domain Code,[3] states in pertinent part:

"Whether at the hearing before the viewers, or at the trial in court on appeal:

. . . .

"(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:

"(i) The price and other terms of any sale or contract to sell the condemned property or comparable property made within reasonable time before or after the date of condemnation."

Because the lots here in question were all unimproved lots, both valuation experts based their testimony upon comparable sales. The basic theory here is that if a similar property located in similar surroundings sold recently at some given price, that price would be relevant in determining the market value of the property being appraised. Section 705 of the Eminent Domain Code does not set forth any specific criteria for what is "compara-

3. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-705(2).

ble." The section merely restricts the evidence to comparable property sold within "a reasonable time before or after the date of the condemnation." The responsibility for controlling the admissibility of valuation evidence on comparables lies within the trial judge.[4] Our Supreme Court has stated:

> "We agree with the comment to §705(2) appearing in Snitzer, Pennsylvania Eminent Domain at 397-8 (1965), which indicates that a sale, in order to be admissible, has to be not only comparable, but also *'judicially comparable,'* and that §705 is based on the proposition that the courts will retain their control over the admissibility of valuation evidence, deciding on a case by case basis, whether an item of evidence is probative and relevant." *Commonwealth v. 108.3 Acres of Land,* 431 Pa. 341, 344-45, 246 A.2d 124, 125 (1968). (Emphasis in original.)

We have read and reread this record concerning the evidence and testimony on comparables, and can find no reversible error.

Lastly, appellants argue that even if any one of the issues raised is not sufficient for reversible error, the cumulative effect of these issues together with the amount of the court's award, is sufficient to warrant a reversal. We find no merit whatsoever in this argument. A fair reading of this record would lead any reasonable man to conclude that there were periods of high emotion involved. Counsel for the appellants was related by blood to all of the individual appellants. He had more than the usual advocate's interest in this case. Although we do not condone a trial judge suggesting objections to any trial counsel, which was done on more than one occasion during the trial in this case, and although the trial judge confessed for the record some impatience, we cannot find, even from a cumulative standpoint, any reversible error.

---

4. *Arndt. supra,* note 2.

As we have said in other cases, we will not reverse or grant a new trial in an eminent domain case based upon the size of the just compensation awarded unless it is unconscionable and shocking to our sense of justice.[5] In this case the Board of View awarded appellants $2,815 total, and while that is not controlling,[6] neither is the testimony of the appellants' expert witness (who submitted a valuation for all of the lots in the amount of $33,800). The Township's valuation expert testified that in his opinion all of the lots had a fair market value of $6,135. In reading this entire record from cover to cover, we cannot find that the court's award in the amount of $12,050 is unconscionable. Whether we would have awarded more or less is of no moment. The question for this case is whether the amount is so low as to be a deprivation of appellants' constitutional and statutory rights. We hold that it is not.

·In summary we hold that the trial court did not abuse its discretion or commit an error of law, and, therefore, we affirm.

---

5. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516 (1970) *Arndt, supra,* note 2.

6. *Arndt, supra,* note 2.