Benjamin and Fannie Kellman Trust Fund, Dart Supply, Inc., and Harry J. Tueche v. Commonwealth of Pennsylvania, Department of Transportation. Benjamin and Fannie Kellman Trust Fund, Appellant.

Argued October 28, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*George J. Morgan*, with him *Roda, Morgan, Hallgren & Heinly*, for appellant.

*John M. Campfield*, with him *A. C. Scales*, and *Scales and Shaw* for appellee, Dart Supply, Inc.

*Bernard S. Shire*, with him *Shire, Bergstein & Caruso*, for appellee, Tueche.

*David Ward Murphy*, Special Assistant Attorney General, for Commonwealth.

OPINION BY JUDGE MENCER, March 18, 1976:

The Benjamin and Fannie Kellman Trust Fund (Kellman) raises before this Court an issue concerning the entitlement of its lessees, Dart Supply, Inc. (Dart) and Harry J. Tueche (Tueche), to an award for bonus value damages in a condemnation proceeding instituted by the Commonwealth. Although the facts concerning the bonus value issue are not really disputed, the complicated procedural history of this case has raised a good deal of confusion in the minds of the litigants. Therefore, after carefully reviewing the record in this case, we set forth in some detail the circumstances surrounding this appeal.

On April 6, 1971, the Commonwealth of Pennsylvania, for the use of its Department of Transportation, filed a declaration of taking against a tract of land, with improvements erected thereon, situate in the Township of Rostraver, Westmoreland County. The tract was owned by the appellant Kellman which had leased parts thereof to appellees Dart and Tueche. On March 15, 1973, the board of viewers (board) filed its report awarding damages of $68,200 to Dart, $37,500 to Tueche, and $165,000 to Kellman. All three condemnees timely appealed this report to the Court of Common Pleas of Westmoreland County, alleging, as the sole reason for their respective appeals, the inadequacy of the amount of the board's

awards. On April 16, 1973, Tueche amended his appeal[1] by adding a more specific objection concerning the assessment of the improvements to his leasehold and by demanding a pretrial conference and ruling by the court to determine these issues of law prior to trial.

The Commonwealth also filed timely objections to the board's report. In addition to demanding a jury trial de novo, the Commonwealth objected to the failure of the report to comply with Section 511(7) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-511(7), which requires, when there are several interests in a condemned property, that the board set forth, in a brief and concise paragraph, the total damages and the distribution thereof between or among the several claimants. Subsequently, the Commonwealth also filed a request pursuant to Section 507 of the Code, 26 P.S. §1-507, to consolidate the claims of the respective parties for eventual trial.

The Court of Common Pleas, sitting en banc, issued an order remanding the report to the board solely to correct the technical Section 511(7) deficiency. The Court also, by a separate order filed on the same day, refused Kellman's motion opposing the Commonwealth's request for consolidation.[2] Neither opinion discussed Tueche's amended appeal and there was no appeal taken from either order. At this point various docket entries imply that all parties were making preparation for trial de novo. During this period between remand and eventual reissuance of the board's report, Kellman filed with the *board* an extensive "Request for Findings of Fact and Conclusions of Law."

---

1.  April 14 fell on a Saturday; therefore, Tueche's amended appeal also met the statutorily imposed limitations period of thirty days. Statutory Construction Act of 1972 §1908, 1 Pa. C.S. §1908.

2.  In essence then, the Court ruled affirmatively on the Commonwealth's original petition for consolidation. This motion of Kellman's is not contained in the certified record.

On December 23, 1974, the board filed its amended or supplemental report which, as its only change, merely added together the original three separate awards to the condemnees, thereby curing the technical Section 511(7) defect. No mention was made of Kellman's request for findings or of Tueche's undisposed objections.

All parties to the litigation appealed from that supplemental report. In its appeal, Kellman additionally alleged that the board was in error in failing to rule on Kellman's "Request for Findings of Fact and Conclusions of Law," in failing to state a date from which detention damages would be paid, and in finding damages due Tueche and Dart. Kellman's new appeal also raised Kellman's former assertion regarding the inadequacy of the award of damages and requested a pretrial conference and ruling to determine the legal issues prior to trial.

Again all parties proceeded with preparations for the eventual trial de novo. Briefs were filed concerning the legal issues to be resolved before the trial, and the requested pretrial conference was held before Judge MCCORMICK.

Judge MCCORMICK subsequently issued an "Opinion and Pre-Trial Order" which purported to consider the issues raised by the various parties in their respective appeals from the two reports of the board. In his opinion, Judge MCCORMICK rejected Kellman's objections to the supplemental report as being untimely and improperly made.[3] Nevertheless, the lower court considered the issue of bonus value as having been properly raised by Tueche's appeal from the supplemental report of the board.[4] After

_____

3. Kellman's objections as to the bonus value issue were rejected for the reason that that issue had been raised for argument previously, at the time of the hearing on the original objections to the report and that it had been rejected by the court en banc. The record is silent in this regard, but it is clear that Judge MCCORMICK wrote both opinions.

4. Apparently the lower court concluded that Tueche's timely amended appeal of the original report of the board, which was not

discussing that issue at some length, Judge McCORMICK ordered the case to trial with Dart and Tueche being allowed to offer evidence as to the bonus value of their condemned leasehold interests. *See* Sections 601, 602 of the Code, 26 P.S. §§1-601, 1-602. It is from that order that Kellman brought its appeal to this Court.

Kellman raises as its sole issue before this Court the question of the entitlement of Dart and Tueche to bonus value damages. In their response to Kellman's appeal, Tueche and Dart contend, in addition to arguing for affirmance of the lower court on the substantive issue of bonus value, that this Court lacks jurisdiction over the appeal because the order appealed from was not a "final order" as required by law and that Kellman has waived its right to raise objections other than to the amount of the award because of its failure to timely raise those additional objections subsequent to the first report of the board.[5]

Turning then to a resolution of these issues,[6] we find Section 402 of the Appellate Court Jurisdiction Act of

---

disposed of by the court en banc, preserved for Tueche the same issues in his appeal from the supplemental report of the board. However, Kellman's failure to raise more than the mere inadequacy of compensation in its appeal from the original report of the board precluded Kellman from expanding the scope of its appeal at the time of the supplemental report of the board.

5. These objections of Dart and Tueche should have been raised in a motion for this Court to quash the appeal. Although no motion to quash has been filed, we will nevertheless rule on these contentions for they definitely merit our attention as issues questioning the jurisdiction of this Court. For a court's authority to so rule in absence of a motion, *see Hession Condemnation Case*, 430 Pa. 273, 242 A.2d 432 (1968).

6. The procedural morass that has developed from this simple condemnation case breathes life into that judicial Hydra envisioned by Mr. Justice O'BRIEN in his dissenting opinion in *Hession Condemnation Case, supra* note 5. Obviously, the procedural monster

1970, Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.402, to be especially pertinent to our discussion of the procedural aspects of this case. It provides in part:

"The Commonwealth Court shall have exclusive jurisdiction of appeals from *final orders* of the courts of common pleas in any of the following cases, except such classes of appeals as are by section 202 of this act [17 P.S. §211-202] within the exclusive jurisdiction of the Supreme Court:

. . . .

"(6) All proceedings arising under the Eminent Domain Code [26 P.S. §1-101 et seq.] or where there is drawn in question the power or right of a condemnor to appropriate the condemned property." (Emphasis added.)

In applying this provision, we are required to turn to Sections 515, 516, and 517 of the Eminent Domain Code, 26 P.S. §§1-515 to -517, which further provide:

"Section 515. *Any party aggrieved by the decision of the viewers may appeal to the court of common pleas within thirty days from the filing of the report. The appeal shall raise all objections of law or fact to the viewers' report.* The appeal shall be signed by the appellant or his attorney or his agent and no verification shall be required. *Any award of damages* or assessment of benefits, as the case may be, *as to which no appeal is taken within thirty days, shall become final as of course* and shall constitute a final judgment.

"The court, on its own motion, or on application of any party in interest, may consolidate separate appeals involving only common questions of law as one proceeding.

---

created by the General Assembly's enactment of a bifurcated appeal structure under the Eminent Domain Code has come to haunt the courts of this Commonwealth in a manner not envisioned by its creators.

"If a condemnee having less than the entire interest in the condemned property appeals the award to him, the condemnor shall have an additional fifteen days to appeal the entire award.

"Section 516. (a) *The appeal shall set forth:*

(1) The name of appellant and appellee.

(2) A brief description or identification of the property involved and the condemnee's interest therein.

(3) A reference to the proceedings appealed from and the date of the filing of the viewers' report.

(4) *Objections, if any, to the viewers' report, other than to the amount of the award.*

(5) A demand for jury trial, if desired. If the appellant desires a jury trial, he shall at the time of filing the appeal, endorse thereon, or file separately, a written demand for jury trial, signed by him or counsel. If no demand for jury trial is made by the appellant, any other party may file a written demand for jury trial within fifteen days after being served with a copy of the appeal. If no party makes a demand for a jury trial as set forth herein, the right to jury trial shall be deemed to have been waived and the court shall try the case without a jury.

"(b) The appellant shall serve a copy of the appeal on all other parties within five days after filing the same. Proof of service of a copy of the appeal shall be filed by the appellant.

"(c) No other pleadings shall be required and the cause shall be deemed at issue.

"Section 517. *All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order.*

"The amount of damages shall be determined by the court unless a jury trial has been demanded.

"At the trial of the case, the condemnee shall be the plaintiff and the condemnor shall be the defendant." (Emphasis added.)

These sections of the Code reflect the desire of our General Assembly to lend simplification to the variety of appeal procedures once employed in the various separate statutes that concerned condemnation in the Commonwealth. Additionally, the procedures set forth here were created to combine, in one proceeding designated as an "appeal," the former practices of filing exceptions as to questions of law and separate appeals as to questions of fact.

Under the former statutes, the distinction between these two practices was indeed vague.[7] Because of the great amount of difficulty encountered by litigants, counsel, and courts in differentiating between the procedural and substantive aspects of contests, many litigants were often, by mischance, deprived of their opportunities to test meritorious claims in the courts of this Commonwealth. The General Assembly recognized the inequity of this situation and therefore sought, through the use of the remedial legislation presently before us, to preserve an appellant's right to a new trial regardless of the manner in which he was to bring the contest to the viewers' report. We suspect that it has not totally succeeded in that endeavor.

---

7. As a general rule, we would note that exceptions to the viewers' report dealt with questions of procedure, including illegalities in the proceedings, and other questions of law concerning the viewers' report which should be disposed of preliminarily by the court. On the other hand, issues of fact, such as what constitutes the proximate cause of the damages and the amount of damages to be awarded, were properly the subjects of appeal and a trial de novo before a jury. See Chester Municipal Authority v. Delp, 371 Pa. 600, 92 A.2d 169 (1952); Lower Chichester Township v. Roberts 308 Pa. 195, 162. A. 460 (1932).

One of the purposes of the present appeal structure is to provide early judicial review of the reports of boards of view. Questions of improper board procedures or issues determinative of the legal outcome of a board's report must be settled preliminarily to a trial de novo. It is the basic policy of the law to encourage the amicable settlement of disputes to avoid the necessity of litigation. Therefore, the General Assembly desired that, once the report of a board of view is settled and all legal corrections made thereto, the parties would be satisfied and continued litigation would no longer be necessary.[8] Likewise, this was one of the reasons for filing exceptions to a viewers' report under former procedures.

Although the problems of condemnees have been somewhat alleviated by the new statutory material set forth in Sections 515, 516 and 517 of the Code, in that they now will not lose their right to trials de novo because of procedural mistakes, the problems of the courts remain the same, for it is clear that the "objections" procedures relative to the viewers' report, as required by Section 516(a)(4) of the Code, remain the same as the former "exceptions" procedures under the various former acts.[9]

---

8. The purpose of the third sentence in Section 517 of the Code is to enable a trial court to dispose of legal issues questioned by the parties to the litigation in the hope that those parties, otherwise satisfied with the amount of the award, would then be satisfied with the board's report and not demand trial de novo.

9. This conclusion finds both direct and indirect support from a wide variety of authority.

The official comment of the Joint State Government Commission on Section 516 of the Code states:

"Subsection (a)(4) is intended to cover what formerly were exceptions. 'Objections' is not intended to mean objections to rulings on evidence, competency, etc.; it means objections to the report. Under existing law, an appeal on the merits as to damages is considered a trial de novo and neither the viewers' report nor any of their findings nor the amount of the award are admitted for the appeal, nor can they be introduced into evidence. Sweeney v. City of Scranton, 74 Pa. Superior Ct. 348

It therefore remains incumbent upon the lower courts to delineate between the matters involved in the consolidated appeal. Once this is done, the court must then rule

(1920) (trial de novo); Berger v. Public Parking Authority of Pittsburgh, 380 Pa. 19 [109 A.2d 709] (1954) (viewers' report not admissible.)"

One case, *Boeing Co. v. Department of Transportation*, 64 Pa. D. & C. 2d 269 (1973), has directly adopted this position. Three Supreme Court cases bear on this issue. In *Manganese Steel Forge Company v. Commonwealth*, 421 Pa. 67, 218 A.2d 307 (1966), the Supreme Court delineated separate results for questions on appeal of "the amount of an award" as opposed to "the fact that the specific relocation item was non-compensable." In *Pane v. Department of Highways*, 422 Pa. 489, 222 A.2d 913 (1966), the implication of the Supreme Court's opinion is that matters of law (in this case, a determination as to whether there was an actual taking of any part of the condemnee's property) which were formerly the object of the filing of exceptions are the proper subject of a lower court's affirmance of an appeal from the report of the viewers. In *Dacar Chemical Products Company v. Allegheny County Redevelopment Authority*, 425 Pa. 343, 228 A.2d 778 (1967), our Supreme Court considered the appeal by the Redevelopment Authority from an order of the court below which reversed and remanded to the viewers their original report for the viewers to ascertain additional damages authorized by the 1964 amendments to the Code. After disposing of the substantive aspects of the case, the Supreme Court noted:

"The foregoing analysis satisfactorily disposes of the substantive problem in this matter. There is, however, a procedural question which, although it will have no effect on the disposition of this case, merits discussion. In Manganese Steel Forge Company v. Commonwealth, 421 Pa. 67, 218 A.2d 307 (1966), this Court noted that in eminent domain proceedings an appeal from the report of the board of viewers is heard de novo by the court of common pleas. That being so, it would seem that we ought properly to dismiss the instant appeal. However, in Manganese, the only dispute was one of fact. There was no dispute as to the law applicable, and both parties agreed with the ruling of the lower court. Accordingly, the issue was moot, and, properly refusing to decide a moot question, we dismissed the appeal. In the present matter, the very dispute concerns which law is to be applied, and the issue

on the legal issues.[10] The court may then confirm, modify or change the report based on the filed objections (formerly exceptions). Section 517 of the Code. Any such order is considered a final order under Section 517 of the Code and is therefore appealable to this Court pursuant to Sections 402 of the Appellate Court Jurisdiction Act of 1970.[11] However, the court below may refer the report

---

before us is clearly justiciable." 425 Pa. at 347-48, 228 A.2d at 780.

Three cases from the Superior Court lend some additional support to our conclusion. See *Lectronic Distributors, Inc. v. Redevelopment Authority of Philadelphia*, 217 Pa. Superior Ct. 310, 272 A.2d 208 (1970); *Harris v. Pittsburgh Urban Redevelopment Authority*, 212 Pa. Superior Ct. 232, 243 A.2d 167 (1968); *Lasher v. Allegheny County Redevelopment Authority*, 211 Pa. Superior Ct. 408, 236 A.2d 831 (1967). Likewise, further support is gained from three cases decided by this Court. See *Department of Transportation v. Kastner*, 13 Pa. Commonwealth Ct. 525, 320 A.2d 146 (1974), *cert. denied*, 419 U.S. 1109 (1975); *Short v. Commonwealth*, 5 Pa. Commonwealth Ct. 91, 289 A.2d 253 (1972); *Hazleton Redevelopment Authority v. Hudock*, 2 Pa. Commonwealth Ct. 670, 281 A.2d 914 (1971).

Our research has determined that lower courts of this Commonwealth have followed this line of reasoning. See *Commonwealth v. Plasterer*, 55 Pa. D. & C. 2d 529 (1972) (case remanded to viewers for introduction by Commonwealth of evidence required under Section 702 of the Code, 26 P.S. §1-702); *Belusko v. Department of Highways*, 39 Pa. D. & C. 2d 372 (1966) (viewers reversed and case remanded for further proceedings to determine consequential damages); *Herr v. Commonwealth*, 11 Lebanon 51 (1965) (viewers reversed and case remanded for further proceedings to determine detention damages).

10. The remainder of the issues, those formerly raised by "appeals," are considered moot because they will be ruled on during the course of the de novo trial. See *Dacar Chemical, supra* note 9.

11. It must be noted that only in the case of an appeal from the "confirmation, modification, or changing" of the viewers' report based on the filed objections does the statute provide for the finality of the lower court's order, thereby allowing appeal. Section 517 of the Code does not apply to a situation where a party appeals from

"back to the same or other viewers." Section 517 of the Code. This type of order is not a final order, and it is therefore not an appealable order.[12]

Accordingly, within thirty days of the filing of the viewers' report, an aggrieved party must file its appeal "raising all objections of law or fact to the viewers' report." The lower court then separates in these objections issues which were formerly the subject of "exceptions" from those that were formerly the subject of "appeal." Issues formerly raised on appeal are reserved for the trial de novo and are ruled on at that time. Those of law, formerly exceptions become the basis for the lower

---

the lower court's adverse ruling on the appellee's preliminary objections to the appeal. *Cf. Miller Estate v. Department of Highways*, 424 Pa. 477, 227 A.2d 679 (1967); *Shaw Electric Company, Inc. v. Electrical Workers Local 98*, 422 Pa. 211, 220 A.2d 889 (1966). Of course, an appeal will lie in such cases if the issue appealed concerns the question of jurisdiction. *See Exxon Corporation v. Department of Transportation*, 10 Pa. Commonwealth Ct. 301, 312 A.2d 121 (1973); *accord, Shaw Electric Company, supra.*

12. On at least two occasions courts in this Commonwealth have entertained, without directly discussing this issue, appeals from remand orders. *See Dacar Chemical, supra* note 9, and *Department of Transportation v. Kastner, supra* note 9. However, in both these cases highly extenuating circumstances were present. In *Dacar Chemical* the Supreme Court had before it an order both remanding *and changing* a viewers' report. In *Kastner* the legal question concerned the threshold question of whether or not a taking had actually occurred. Nevertheless, a direct analysis of the statute seems to compel the acceptance of a construction that remand orders are not appealable orders. Section 517 provides in part that "[t]he court may *confirm, modify, change the report or refer it back* to the same or other viewers. A decree *confirming, modifying or changing* the report shall constitute a final order." (Emphasis added.) Clearly, the absence of a word denoting remand in the second sentence, where the first sentence expressly includes remand orders, evidences a definite legislative intent to exclude remand orders from the appeals structure. *See* 1 Pa. C.S. §1924. "Expressio unius est exclusio alterius." *Fazio v. Pittsburgh Railways Company*, 321 Pa. 7, 182 A. 696 (1936).

court's decision. The case is then decided on the *procedural legal objections raised,* not on the responsive pleadings filed thereto. If the report is remanded for adjustment by the Board, the best procedure would be to hold the remaining issues in abeyance until the return of the report.[13] At the time the report is returned, the court reconsiders the report in light of all the previously raised issues.[14] The court then exercises its powers to confirm, modify or change the report.[15] From this or any other *final* decision of the lower court an aggrieved party may file an appeal to this Court raising any of the objections *raised originally* which were adjudicated adversely to the party. After disposition of this appeal, the final report stands before the parties for their acceptance or rejection, and the case may then move to trial de novo, if the appeal is not withdrawn.

These procedures do not preclude the subsequent raising on appeal of issues of law or the application of law to the facts after a trial de novo before a lower court. A mere survey of the number of cases passed upon by this Court should be enough to dissuade any litigant from a contrary supposition. Properly made objections, other than those types of objections specifically required by law to be raised at other stages in condemnation proceedings,[16] made during a trial de novo, remain reviewable on appeal.

---

13. At this point the viewers may only act upon those specific directions from the remanding court.

14. The lower court may, of course, again remand the report if it considers such action necessary to correct subsequent errors of the viewers or to consider other relevant subjects for remand.

15. This fulfills the former function of an absolute confirmation of the report.

16. For example: Matters questioning the legal sufficiency of a petition for the appointment of viewers should be made by way of preliminary objections. *See Jacobs v. Nether Providence Township,* 6 Pa. Commonwealth Ct. 594, 297 A.2d 550 (1972) ; *accord, Reilly v. Department of Environmental Resources,* 21 Pa. Commonwealth Ct. 611, 346 A.2d 918 (1975).

Therefore, while a lower court might rely on its disposition of those issues raised in the appeal from the viewers' report in its subsequent trial of the case or, on an appeal from a trial de novo, the issues raised and decided in the appellate structure of Article V may preclude such issues from being raised again, the mere failure to raise issues pursuant to Article V does not preclude their subsequent disposition after a trial de novo.[17]

Turning now to the facts at issue, we note that all four parties to the proceeding (Tueche, Kellman, Dart, and the Commonwealth) correctly preserved their respective rights to appeal by their initial timely appeals from the original viewers' report. Tueche, by filing an amended appeal within the thirty days' limitation period effectively perfected his appeal as so amended.

The lower court, sitting en banc, by its first order, expeditiously disposed of a technical objection to the viewers' report. No one could have properly filed an appeal from that remand order.[18]

The second order of the lower court sitting en banc disposed of the question of consolidation.[19] This order did constitute an appealable order. However, since no appeal was taken from that order, the propriety of the consolidation is not before us.[20]

---

17. Such issues may be raised in this manner because of the existing bifurcated appeals structure.

18. See note 12 *supra*.

19. In note 3 *supra* we explained Judge MCCORMICK'S reasons for considering Kellman's appeal on the issue of bonus value as being untimely. He held that the issue was previously considered by the court sitting en banc. Although no record of that disposition is before us, it is clear that, since Kellman never properly appealed the bonus value issue, that issue as raised by Kellman was never properly before the lower court for its disposition.

20. The lower court should have ruled on the Commonwealth's appeal, not on Kellman's oral motion opposing a part of the Commonwealth's appeal. See note 11 *supra*. Of course, this procedural defect will not change the result reached here.

There is no authority for Kellman's subsequent request for findings of fact. It was untimely and inappropriate, and neither the trial court nor we need consider it.

All parties timely appealed the viewers' supplemental report. However, all appeals were without merit, for the only issue subject to appeal from the second viewers' report was the issue for which the report was remanded: the Section 511(7) deficiency. None of the appeals were directed to that issue.

By their original appeals, all parties preserved for Judge McCORMICK's consideration such issues as had not been originally answered by the court sitting en banc. The resolution of this case therefore turns on those four original appeals and the issues raised therein.

The appeals of Kellman and Dart can be disposed of summarily. Both failed to specifically object to any provisions of the viewers' report. Instead, they merely requested a jury trial because of the alleged inadequacies of their respective awards. Therefore, although they both properly preserved their right to a trial de novo, neither presented any issues for the lower court's preliminary disposition.

The Commonwealth's only objection to the report concerned the technical Section 511(7) deficiency. This defect was cured and that issue is not presently before us. Of course, by its appeal demanding a jury trial because of the alleged excessiveness of the damages, the Commonwealth preserved its rights to trial de novo.

The original appeal of Tueche is much like all of the foregoing. However paragraph 5 of the amended appeal from the original report reads:

"5.   The report of the viewers does not state how the award for the interest of Harry J. Tueche in the condemned property was computed. The appellant, Harry J. Tueche, is entitled to have his improvements assessed at their value in place over the useful life of the improvements without regard to the term of

the lease that was held on a portion of the condemned property. This raises a question of law which concerns the method of computing damages and a pre-trial conference and ruling by the court is requested to determine this issue of law prior to trial by jury."

The last sentence of paragraph 5 deals with the proposed procedural disposition of the appeal. It is implied by Dart and Tueche that Section 517 of the Code provides for a procedure for a binding judicial determination of matters of law prior to the start of the trial de novo. Seemingly, the lower court accepted this interpretation when in his pretrial order Judge McCormick granted leave to Dart and Tueche to introduce evidence as to bonus value at the time of trial. We conclude that this is an incorrect construction of the law.

The word "preliminarily" found in Section 517 describes the time reference within which the objections to the viewers' report must be settled. The General Assembly's intent was to have the *viewers' report settled* preliminarily to the start of the trial de novo, not to require *initial* settling of all questions of law prior to a trial de novo.[21] Therefore, since the lower court's order entered prior to a trial de novo disposes of legal issues properly reserved for the de novo trial, it is reversed.[22] During the course of a trial or even before a trial com-

21. We are not unmindful of implications that might be gleaned from certain cases that a preliminary binding disposition of issues of law can be properly made prior to trial de novo. *See Manganese Steel Forge Company v. Commonwealth, supra* note 9; *Lasher v. Allegheny County Redevelopment Authority, supra* note 9. However, we reject such implications on the basis of obiter dictum. See note 9 *supra*.

22. The pretrial order would have the same validity and effect as any other pretrial order in any litigation. See 5 Standard Pennsylvania Practice 166-70. It would not be an appealable order under Section 517 of the Code. A pretrial order cannot be used to dispose of issues such as bonus value, presently raised here.

mences, a judge may consider, outside the presence of the jury, the admissibility of evidence or the legal issues to be resolved. *Arndt v. Central Cambria School District*, 7 Pa. Commonwealth Ct. 150, 298 A.2d 682 (1972). Then during the course of the trial the judge will, as a matter of course, rule on requests made concerning those issues, and the trial will proceed, with the party receiving the unfavorable ruling retaining the right to appeal after the conclusion of the trial.

We conclude that the order of the lower court merely ruled on the applicability of the bonus value issue in connection with the trial de novo. Kellman may still properly object during the trial to the introduction of testimony as to bonus value and thereby preserve its right to subsequent appeal, at the termination of the trial, from any adverse trial ruling. Further, the lower court did not correctly dispose of the issue raised by Tueche's amended appeal. Instead of granting Tueche leave to introduce evidence as to bonus value at the time of the trial de novo, the lower court should have, pursuant to Section 517, either confirmed, modified or changed the report or referred the report back to the board relative to the issues raised by Tueche's amended appeal. Therefore, this issue should be passed upon preliminarily to the trial de novo, unless withdrawn by Tueche.

Order reversed and case remanded for proceedings not inconsistent with this opinion.

---

DISSENTING OPINION BY JUDGE KRAMER:

I dissent because I do not agree with the majority's analysis of the purpose of Section 517 of the Eminent Domain Code, and because I do not believe the order appealed from was a final order.

Section 517 of the Code does provide a procedure for binding judicial determination of "questions of law basic to the inquiry" prior to the start of the trial *de novo*.

*Hershey v. Exxon Corporation,* 20 Pa. Commonwealth Ct. 537, 342 A.2d 497 (1975). I cannot agree with the majority's holding that Section 517 is intended to provide a procedure for preliminarily settling the viewer's report in the hope that further litigation might be avoided. The majority states that the purpose of Section 517 is "to enable a trial court to dispose of legal issues questioned by the parties to the litigation in the hope that those parties, otherwise satisfied with the amount of the award, would then be satisfied with the board's report and not demand trial de novo." I suggest that this alleged purpose is illusory, because parties who are "satisfied with the amount of the award" do not appeal from that award or present objections to the court.

Section 517 requires a trial court, preliminary to the trial *de novo,* to dispose of objections which raise questions of law basic to the inquiry. Any pre-trial order which disposes of an objection raising a question of law basic to the inquiry is a confirmation, modification, or change of viewer's report, and is a final and appealable order. The crucial factor is the substance of the objection disposed of by the trial court's order rather than the terminology used in the order. If an appeal only raises objections as to the amount of the viewer's award, then a pre-trial order which purports to "confirm" the viewer's award is not appealable.

In the instant case, no objections raising questions of law basic to the inquiry were properly presented to the trial court. Both the trial court and the majority seem to assume that Tueche's amended appeal raised the issue of whether Tueche was legally entitled to damages. I do not agree. The Board of View had decided that Tueche was entitled to damages, and Tueche was obviously satisfied with the Board's decision on this question of law. Paragraph 5 of Tueche's amended appeal clearly raises an issue concerning *how* Tueche's damages should be determined, but it does not raise an issue concerning

whether Tueche is entitled to damages as a matter of law. Tueche's appeal only raised an objection concerning the measure of his damages, and that issue may not be decided preliminary to trial. Questions of law which pertain to the measure of damage, the elements of damage, or the evidence of damage are not properly raised by objections in an appeal. Snitzer, *Pennsylvania Eminent Domain*, §517-1.6.

The majority states that the trial court "should have, pursuant to Section 517, either confirmed, modified or changed the report or referred the report back to the board relative to the issues raised by Tueche's amended appeal." I could agree with that statement if Tueche's appeal raised an issue of law basic to the inquiry. Since Tueche's appeal only questions the amount of damages and measure of damages, I cannot agree that any issues exist in this case which should be disposed of by the trial court preliminary to trial. I would dismiss Kellman's appeal and allow this case to proceed to trial.