Thomas George, Jr. and George Allen, Executors of the Estate of Roy Allen, Tenants in Partnership t/a Lehigh Stripping Co., Appellants *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Argued June 10, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS and MACPHAIL, sitting as a panel of three.

*Alan A. Turner*, with him *Thomas B. Rutter,*
*Thomas B. Rutter, LTD,* for appellants.

*Patrick J. LaVelle*, Assistant Counsel, with him
*Ward T. Williams,* Chief Counsel, and *Jay C. Wald-*
*man,* General Counsel, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., De-
cember 28, 1982:

The Schuylkill County Common Pleas Court, by
order, denied Thomas George, Jr., and George Allen's
(condemnees) motion for a new trial. Condemnees
appeal. We reverse and remand.

In June, 1966, the Commonwealth filed a Declara-
tion of Taking condemning a portion of condemnees'
property for construction of Interstate 81. A Board
of View assessed damages at $70,000; on appeal by the
Commonwealth, a jury awarded the condemnees $10,-
208.28. The condemnees now appeal, contending that

(1) the trial court erred by instructing the jury to make certain factual determinations which were stipulated to by the parties; and (2) that the trial court abused its discretion in denying their motion for a new trial based on the inadequacy of the jury verdict. Because we agree with the condemnees' former contention, we will not address the latter.

A motion for a new trial is addressed to the discretion of the trial court based upon the circumstances of the particular case and the resultant decision will not be reversed absent a manifest abuse of discretion or a clear error of law. *Arndt v. Central Cambria School District*, 7 Pa. Commonwealth Ct. 150, 298 A.2d 682 (1972).

During the first day of trial, counsel for the parties, following an hour-long conference out of the jury's presence, stipulated to certain facts. The court advised the jury of the contents of the stipulations:

THE COURT: For the record and Members of the Jury, the last hour has not been unproductive, because counsel for both sides have entered into an agreement concerning some very basic matters relating to this case which, if they were required to be proved on a step-by-step basis, would consume at least two or three days. They have agreed—and correct me, gentlemen, if I state it incorrectly—they have agreed upon the following:

. . . .

[T]hat on June 17, 1966, the Commonwealth took, under its right of eminent domain, the sum of 128.66 acres of the acreage [belonging to the condemnees]. Counsel also agreed that in addition to the amount of acreage actually taken that *the condemnation resulted in 207.39 acres being landlocked,* that is acreage to which there

is now no legal access by the owners. (Emphasis added.)

Following four days of testimony, the court, in reviewing the testimony of a condemnees' witness, instructed the jury as follows:

Now, the question of which this particular testimony puts before you is, notwithstanding the stipulation that there is an area of land which is referred to as landlocked, notwithstanding that, *the question you must decide is whether or not, in fact, that land is landlocked,* because one of the claimant's own witnesses testified that there is a way in, and he said that is limited by the fact that you have to trespass over railroad company property. (Emphasis added.)

Preceding this portion of the instruction, the court defined the term "landlocked" as:

Now, the definition of landlocked land is land owned by a claimant to which there is now no legal access without trespass over the lands of other people. Now, that definition would apply to this case if you find certain things as I will discuss later in going through the testimony. For purposes of definition and definition only —*I am not telling you that these are the facts of the case,* I am merely telling you the definition of the word "landlocked"— landlocked land is land to which there is now no legal access without trespass over lands of other people. (Emphasis added.)

The condemnees contend, and we agree, that this language wrongfully repudiates the stipulation between the parties as to the landlocked 207.39 acres.

Sitpulated facts are binding upon the court as well as the parties. *Greenville Steel Car Co. v. Commonwealth,* 20 Pa. Commonwealth Ct. 385, 343 A.2d 79

(1975). As was stated by the Pennsylvania Superior Court in *Zvonik v. Zvonik,* 291 Pa. Superior Ct. 309, 322-23, 435 A.2d 1236, 1243 (1981):

> "[a]ny matter which involves the individual rights or obligations of the parties inter se may properly be made the subject of a stipulation between them" Foote v. Maryland Casualty Co., 409 Pa. 307, 313, 186 A.2d 255, 258 (1962). . . . This includes oral stipulations made in open court, which receive the imprimatur of the trial judge, and thus have the same effect as though reduced to writing and executed with complete formality. Black v. Black, 206 Pa. 116, 117-118, 55 A. 847, 878 (1903); (citations omitted).

It is clear from the record that both parties stipulated to the 207.39 acres being landlocked. Condemnees contend that their property became landlocked as a result of the condemnation and at trial stipulated accordingly. The Commonwealth argues that it stipulated that the 207.39 acres were landlocked since it was its position from the outset that the property taken was landlocked *before* condemnation by a right-of-way held by the Lehigh Valley Railroad.

The lower court ruled for the Commonwealth and criticized the condemnees for proffering "no evidence whatsoever to define the ownership rights of the Lehigh Valley Railroad in the track bed which traversed [condemnees'] lands parallel with the right of way acquired by the Commonwealth on June 17, 1966. . . ."

The lower court erred by instructing the jury to make a determination whether the 207.39 acres were landlocked. It is clear to us that the parties, by stipulation, removed this factual determination from the province of the jury. As we have said, the trial court advised the jury that the parties stipulated that "the condemnation resulted in 207.39 acres being landlocked." The condemnees did not offer evidence as to

the ownership rights of the railroad's right-of-way because it was unnecessary. The stipulation in the hands of the jury noted that 207.39 acres became landlocked *as a result of* the condemnation. If there had been a contrary agreement, it should have been so stated by the trial court.

Because we conclude that the lower court committed an error of law in its jury instructions, we reverse its order denying the condemnees' motion for a new trial and remand for proceedings not inconsistent with this Opinion.

### ORDER

The Schuylkill County Common Pleas Court order, No. 607 July Term 1966, dated May 5, 1980, is hereby reversed and this case is remanded for proceedings not inconsistent with this Opinion.