393 A.2d 341

**DOUGLAS WASTE PAPER COMPANY, Appellant,**

**v.**

**REDEVELOPMENT AUTHORITY OF the CITY OF PHILADELPHIA.**

Supreme Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 5, 1978.

---

Leon W. Silverman, Philadelphia, for appellant.

Dennis L. Friedman, Peter A. Galante, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellee, Redevelopment Authority of the City of Philadelphia, has condemned the realty upon which appellant Douglas Waste Paper Company conducts its scrap metal and paper business, but has not yet taken possession of the premises. Unable to obtain special permits authorizing operation of its business, Douglas has not relocated in the immediate area. It has also found the cost of property outside the immediate area too expensive for its type of business. Douglas therefore has remained on the condemned premises as the Redevelopment Authority's tenant.

A jury awarded Douglas general damages of $30,000 for real property and $10,000 for machinery and equipment taken by the Redevelopment Authority.[1] The jury also awarded Douglas $10,000 for special dislocation damages under Section 601–A(b)(3) of the Eminent Domain Code.[2]

1. See Eminent Domain Code, Act of June 22, 1964, P.L. 84, § 603, 26 P.S. § 1–603 (Supp.1978) (setting forth "fair market value" standard for determining general damages to which a condemnee is entitled).

2. Section 601–A(b)(3), 26 P.S. § 1–601A(b)(3) (Supp.1978), provides:
 "(b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business or farm operation as follows:

 \* \* \* \* \* \*

 (3) In addition to damages under clauses (1) or (2) of this subsection, damages of not more than ten thousand dollars ($10,-000) nor less than twenty-five hundred dollars ($2,500), in an amount equal to either (i) forty times the actual monthly rental, in the case of a tenant, or forty times the fair monthly rental value, in the case of owner-occupancy; or (ii) the average annual net earnings, whichever is greater. For the purposes of this subsection, the term 'average annual net earnings' means one-half of any net

The trial court denied the Redevelopment Authority's motions for judgment notwithstanding the verdict, and new trial, on the issue of dislocation damages. The Commonwealth Court reversed, concluding that Douglas may not receive the award of special dislocation damages while it still occupies the premises. We granted Douglas's petition for allowance of appeal.[3]

The question here is whether Douglas, before surrendering the premises, is entitled to special dislocation damages under Section 601–A(b)(3) of the Code. Though we agree with the Commonwealth Court's determination that Douglas is not entitled to dislocation damages while in possession of the premises, we believe that the court of common pleas properly exercised its discretion in submitting the question of dislocation damages to the jury. We hold that, upon surrendering the condemned premises, Douglas is entitled to receive payment of the jury's award of $10,000 for dislocation damages. We therefore vacate the order of the Commonwealth Court and remand the case to the court of common pleas with directions to modify the judgment accordingly.

 The Commonwealth Court correctly concluded that a "condemnee" like Douglas cannot recover special dislocation

> earnings of the business or farm operation before Federal, State, and local income taxes, during the two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property acquired for such project, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such period. The regulations promulgated under section 604–A may designate another period determined to be more equitable for establishing average annual net earnings, provided the designation of such period does not produce a lesser payment than would use of the last two taxable years. In the case of a business, payment shall be made under the subsection only if the business (i) cannot be relocated without a substantial loss of its existing patronage, and (ii) is not a part of a commercial enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business."

3. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978).

damages under Section 601–A(b)(3) until moving occurs.[4] Section 201(8) of the Code provides:

> " 'displaced person' means any condemnee or other person not illegally in occupancy of real property who moves or moves his personal property as a result of the acquisition for a program or project of such real property, in whole or in part, or as the result of written notice from the acquiring agency of intent to acquire or order to vacate such real property; . . ."

Thus, both a "condemnee" and a "person not illegally in occupancy of real property" must "move or move personal property" before either satisfies the statutory definition of "displaced person."[5] Section 601–A(b)(3) of the Code further demonstrates this legislative intent. Under Section 601–A(b)(3), Douglas may recover special dislocation damages only if it is a "displaced person who is displaced from his place of business."[6]

**4.** " 'Condemnee' means the owner of a property interest taken, injured or destroyed . . .." Eminent Domain Code, § 201(2), 26 P.S. § 1–201(2).

**5.** In *Redevelopment Authority of Allegheny County v. Stepanik*, 479 Pa. 199, 387 A.2d 1292 (1977, filed June 5, 1978), we interpreted Section 201(8) in conjunction with the dislocation damages article of the Code, §§ 601–A—606–A, 26 P.S. §§ 1–601A—1–606A, to determine the circumstances in which a person whose property interest is taken might recover special dislocation damages under Section 601–A(b)(3). We concluded that a landlord owning, but not occupying, a residential apartment building did not fall within the class of "displaced persons" for whom the Legislature wished to provide these special, additional benefits. The landlord did not "move or move personal property" in the common, everyday sense of those terms and therefore was not a "displaced person" entitled to dislocation damages. *Stepanik* therefore refutes appellant's contention that Section 201(8) of the Code is to be read so as not to require a "condemnee," like the one in *Stepanik* or here, to "move or move personal property" to become a "displaced person."

**6.** Douglas argues that Section 604–A(2) of the Eminent Domain Code, 26 P.S. § 1–604A(2), demonstrates the Legislature's desire to permit, in some circumstances, payment of dislocation damages before a condemnee surrenders the condemned premises. Section 604–A(2) authorizes the Attorney General to promulgate regulations to assure "[t]hat a displaced person who makes proper application for a payment authorized for such person by this article [on dislocation damages] shall be paid promptly after a move or, in hardship

■ Nonetheless, we believe that, on this record, the court of common pleas properly submitted to the jury the question of Douglas's entitlement to special dislocation damages. The purpose of the Eminent Domain Code is to "provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor . . .." Eminent Domain Code, § 303, 26 P.S. § 1–303. Provisions throughout the Code demonstrate the Legislature's goal of simplified, fair, and speedy condemnation proceedings.[7]

Instead of postponing determination of Douglas's right to receive special dislocation damages, the court of common pleas permitted the jury to decide whether Douglas is entitled to dislocation damages, and, if so, the amount. The jury resolved these issues together with the amount of general damages caused by the Redevelopment Authority's taking. Thus, consistent with the objectives of the Eminent Domain Code, the trial court's submission to the jury of all issues properly avoided repetitive and prolonged eminent

cases, be paid in advance." Though we agree that advance payments may be permissible under this Section, we cannot agree that advance payment is appropriate in this case. The Attorney General has not promulgated "hardship" regulations, and Douglas has offered no evidence of "hardship" that would justify advance payment here.

7. E. g., Eminent Domain Code, § 402(c), 26 P.S. § 1–402(c) (authorizing consolidation of a declaration of taking to include all properties to be condemned); id., § 406, 26 P.S. § 1–406 (requiring condemnee, within thirty days of service of notice of condemnation, to raise all permissible preliminary objections to declaration of taking); id., § 507(a), 26 P.S. § 1–507(a) ("[t]he claims of all the owners of the condemned property . . . shall be heard or tried together"); id., § 507(b), 26 P.S. § 1–507(b) (permitting business dislocation damages claims to be heard in the same, or separate, proceeding where claims for general damages are resolved); id., § 518(b), 26 P.S. § 1–518(b) (in appeals from awards of boards of viewers, court of common pleas will entertain claims for both general damages and special dislocation damages); id., § 521, 26 P.S. § 1–521 (same); id., § 604–A(1), 26 P.S. § 1–604A(1) (directing the Attorney General to promulgate rules and regulations to assure "[t]hat the payments authorized by this article [on dislocation damages] shall be made in a manner which is fair and reasonable, and as uniform as practicable").

domain proceedings and unnecessary additional burdens on the judicial process. Cf. *Richette v. Pennsylvania Railroad,* 410 Pa. 6, 29, 187 A.2d 910, 922 (1963) ("Good judgment . . . dictates that, considering the clogged conditions of the trial calendars, new trials should not be required unless the interests of justice imperatively require them").

While exhibiting an appropriate regard for the efficient use of judicial, professional, and other resources, the trial court also ensured the fair adjudication of the rights of the litigants. The Redevelopment Authority did not demonstrate that Douglas's inability to relocate without substantial loss of existing patronage is likely to change.[8] Nor did it show that the amount of dislocation damages is inestimable or excessive.[9] In these circumstances, we conclude that the trial court soundly exercised its discretion.

Accordingly, we need only direct modification of the judgment against the Redevelopment Authority to provide that payment of the jury's award of dislocation damages be made upon Douglas's surrender of the premises.

Order of the Commonwealth Court vacated, case remanded to the court of common pleas with directions to modify the judgment in accordance with this opinion, and as modified the judgment is affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

8. Section 601–A(b)(3) provides in part:
 "In the case of a business, payment shall be made under this subsection only if the business (i) cannot be relocated without a substantial loss of its existing patronage . . . .."
 Facts in the stipulated record support the conclusion that Douglas has met this requirement.

9. Indeed, at oral argument, the Redevelopment Authority stated it is willing to pay Douglas the full $10,000 jury award upon Douglas's surrendering the premises.