A Condemnation Proceeding in Rem by Redevelopment Authority of the City of Philadelphia for the purpose of Redevelopment of Center City Redevelopment Area, Franklin Town Project, Philadelphia, Including Certain Land, Improvements and Properties. Premises: 1706-10 Callowhill Street. Owner: Union Electric Contracting Company. Union Electric Contracting Company, Appellant.

Argued September 25, 1978, before Judges CRUM-LISH, JR., WILKINSON, JR. and MACPHAIL, sitting as a panel of three.

*J. Willison Smith, Jr.,* for appellant.

*William T. Steerman,* Special Counsel, with him *Peter A. Galante,* General Counsel, for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 8, 1979:

The instant appeal arises from attempts by the Union Electric Contracting Company (Condemnee) to obtain special damages for displacement[1] prior to its move from the condemned premises.

On April 23, 1973, the Redevelopment Authority of the City of Philadelphia (Authority) filed a declaration of taking of an area designated as the Franklin Town Urban Renewal Area comprising approximately 50 acres within the City. This area included 1706-1710 Callowhill Street, the site of Condemnee's business for

---

[1] Condemnee submitted to the condemning authority estimates of just compensation for removal, transportation, reinstallation of its personal property and costs of search of new location.

44 years. A Board of Viewers was appointed on September 17, 1973. The Authority deposited $93,500.00[2] with the Court of Common Pleas of Philadelphia County on October 20, 1975, and a Writ of Possession was subsequently granted to the Authority.

On December 3, 1976, Condemnee alleged its status as a hardship case and filed with the lower court a petition and rule to show cause why the Authority should not be required to make the maximum payment for special damages authorized under Article VI-A of the Eminent Domain Code (Code)[3] in advance of Condemnee's removal from Callowhill Street. Subsequent to the Authority's filing an answer thereto and prior to a hearing on the petition, Condemnee voluntarily surrendered possession of the premises,[4] in accordance with a stipulation by which the claims for special damages made in Condemnee's petition were preserved upon receipt of the $93,500.00, deposited by the Authority.

Upon the Authority's motion, the court below dismissed Condemnee's petition and rule on February 11, 1977. This appeal followed.

The Authority has moved that Condemnee's appeal be dismissed; the matter is now before us on the motion to dismiss and on the merits. Since we grant the motion to dismiss, we will not examine the merits of Condemnee's petition and rule.

The basic question involved, *i.e.*, whether or not Condemnee is entitled to payment of special damages

---

[2] The Authority's estimates of just compensation due as the result of the condemnation of 1706-1710 Callowhill Street.

[3] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, added by the Act of December 29, 1971, P.L. 640, 26 P.S. §§1-601A—1-606A.

[4] The lower court had set aside the Authority's Writ of Possession and stayed all proceedings for possession of the condemned premises until final disposition of Condemnee's petition.

*in advance* of its relocation, is now moot. The facts, as established by the motion to dismiss and answer thereto, indicate that Condemnee has in fact moved its business to a new location in Fort Washington, Pennsylvania, after surrendering possession of the condemned premises to the Authority. The issues of what, if any, payments should be made to Condemnee in advance of the move by virtue of its alleged hardship status, and whether or not the estimates submitted by Condemnee constituted an adequate basis for assessing the cost of Condemnee's relocation and afforded the Authority adequate notice of same, are now academic.

The existence of an actual controversy is a prerequisite to our consideration of an appeal and we will not decide moot questions except in those rare instances where questions of great public importance are involved or where exceptional circumstances exist. *Temple University v. Department of Public Welfare,* 30 Pa. Commonwealth Ct. 595, 374 A.2d 991 (1977); *Baker Nursing Home, Inc. Appeal,* 28 Pa. Commonwealth Ct. 603, 369 A.2d 1336 (1977).

This is not such a case. Clearly, it is the intendment of the Code that, once a Condemnee has in fact moved, its special damages are calculated on the basis of *actual* reasonable expenses incurred and not on the basis of Condemnee's pre-removal projections of cost.[5]

Even were we to treat the instant petition (as did the lower court) as a request for immediate reimbursement of the costs of removal by Court Order prior to a Board of Viewers' award, we would nonetheless affirm the lower court's dismissal because Condemnee's claim is raised in improper procedural posture.

The Board of Viewers is expressly authorized to hear and determine claims for removal expenses, bus-

---

[5] *See* Section 601-A of the Code, 26 P.S. §1-601A.

iness dislocation expenses, and moving expenses.[6] Once a Board of Viewers has been appointed, it has jurisdiction over all claims for special damages, *Mobil Oil Corp. v. Department of Transportation,* 11 Pa. Commonwealth Ct. 593, 315 A.2d 639 (1974), and a court of common pleas has jurisdiction to determine such damages only when the claim is before it on a de novo appeal from the Board of Viewers' award. *Appeal of Kenig,* 25 Pa. Commonwealth Ct. 504, 360 A.2d 776 (1976).

Condemnee should have asserted its claim before the appointed Board of Viewers.

Accordingly, we

### ORDER

. AND Now, this 8th day of January, 1979, the motion to dismiss by Appellee, the Redevelopment Authority of the City of Philadelphia, is hereby granted and the appeal of Appellant, Union Electric Contracting Company, is hereby dismissed.

---

[6] Sections 507(a) and 511(5) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§1-507(a), 1-511(5).