580 A.2d 424

**In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way, for Legislative Route 1010, Section D2, R/W, a Limited Access Highway, in Plymouth Township, Montgomery County, Pennsylvania, Over and Across Lands of Philadelphia Electric Co.**

**Appeal of PHILADELPHIA ELECTRIC CO. ("PECO") (Two Cases).**

**In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way, for Legislative Route 1010, Section D2, R/W, a Limited Access Highway, in Plymouth Township, Montgomery County, Pennsylvania, Over and Across Lands of Philadelphia Electric Co.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Cross–Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1990.

Decided Aug. 29, 1990.

Reargument Denied Oct. 19, 1990.

A. Richard Gerber, with him, John F. Hellegers and Craig J. Fleischmann, Gerber & Gerber, Norristown, for appellant/appellee, Philadelphia Elec. Co.

Carl Vaccaro, Asst. Counsel, with him, John L. Heaton, Chief Counsel, for appellee/appellant, Dept. of Transp.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

The Department of Transportation (DOT) and the Philadelphia Electric Company (PECO) appeal from an order of the Court of Common Pleas of Montgomery County (common pleas court) confirming and modifying the report of the Board of View awarding PECO $2,216,800.00 in general damages and $507,570.00 in moving expenses as a result of a taking by DOT for the purpose of highway construction. We reverse.

On August 21, 1972, DOT filed a declaration of taking for 15.2 of 141.8 acres owned by PECO along Ridge Pike and

Chemical Road in Plymouth Township, Montgomery County for construction of Legislative Route 1010, Section D2, commonly known as the "Blue Route" (Blue Route). DOT's taking resulted in the severing of PECO's property thereby cutting off access between a PECO service building and PECO's headquarters for overhead transmission maintenance. Beginning in 1965, DOT and PECO officials discussed the need for an access road affording PECO access from Ridge Pike to its overhead transmission facility. On February 5, 1973, six months after the taking of PECO's property, DOT filed a notice condemning a highway easement over a parcel of land belonging to Florig Equipment Company, Inc. (Florig) in order to afford PECO access. As a result of DOT's taking, PECO was forced to relocate a large overhead transmission unit from the condemned tract to another PECO property.

On March 28, 1973, DOT tendered PECO $1,064,000.00 as estimated just compensation. On August 11, 1978, in response to a petition filed by PECO, the common pleas court appointed a Board of View. On December 7–8, 1981, the Board of View examined the property and held a hearing at which testimony was presented from both PECO and DOT. On December 17, 1981, the Board of View issued its report informing all parties that the report would be filed January 4, 1982. In its report, the Board of View awarded PECO $2,216,800.00 in general damages and $507,570.00 in moving expenses.[1]

---

1. In paragraph seven of its report, the Board of View states:

    7. After careful and impartial consideration of all the evidence submitted, including a View of the premises, this Board of View makes the following Award:

    TO: PHILADELPHIA ELECTRIC COMPANY, as follows:

| | |
|---|---:|
| Value of Take: | $ 979,450.00 |
| Value of Helicopter Pad Improvements taken: | 64,000.00 |
| Value of Site Improvements taken: | 25,850.00 |
| Severance Damages: | 1,147,500.00 |
| Total— | $2,216,800.00 |

    of which $1,064,000.00 has already been paid, with interest on $1,152,-800.00 from December 1, 1974.

On February 1, 1982, DOT appealed from the Board's findings as to general damages and also the award of $312,700.00 in moving expenses for property PECO had not yet moved alleging that an award before the actual move is contrary to law. On February 2, 1982, PECO filed a cross-appeal as to the general damages and a special appeal alleging that the Board of View erroneously evaluated the after-value of PECO's remaining property by assuming there was access between Ridge Pike and the PECO property as a result of the Florig condemnation, when the Florig condemnation occurred six months after the taking of PECO's property.[2] PECO contends the Board of View's finding directly contravenes the statutory requirement that damages be assessed as of the date of the taking.

Pursuant to Section 517 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–517,[3] the common pleas court addressed the special appeals of DOT and PECO. The common pleas court noted that despite the possibility of a jury trial on issues regarding the amount of damages, it had a duty under Section 517 of the Code to determine the legality of the Report of the Board of View regarding issues other

Plus moving expenses and costs to cure:

| | |
|---|---|
| (1) Cost to relocate stream | $ 10,670.00 |
| (2) Cost to move additional movable property | 312,700.00 |
| (3) Cost (net) of unmovable property | 184,200.00 |
| Total— | $507,570.00 |
| Appraisal, attorney and engineering fees | $ 500.00 |

Report of Board of View, January 4, 1982 at 3. Reproduced Record (R.R.) at 20a.

2. Although the Board of View's decision does not expressly state that the Board considered the access road across the Florig property, neither PECO nor DOT argue that it did not. Consequently, that issue is not contested.

3. Section 517 of the Code provides in pertinent part:
All objections, other than to the amount of the award, raised by the appeal shall be determined by the court preliminarily. The court may confirm, modify, change the report or refer it back to the same or other viewers. A decree confirming, modifying or changing the report shall constitute a final order.
26 P.S. § 1–517.

than the amount of the award.[4]  In determining PECO's special appeal, the common pleas court reasoned that the Board of View did not erroneously factor the access road between the PECO properties into the evaluation of the assessment in violation of Section 602(a) of the Code, 26 P.S. § 1–602(a).[5]

The common pleas court reasoned that, although the access road was not built at the time of the taking of PECO's property, it was included in an overall improvement plan filed in Montgomery County on February 9, 1972 and was referenced in the August 21, 1972 taking of PECO's property.  Thus, the common pleas court concluded that the access road was relevant.  The common pleas court also noted that, on February 5, 1973, DOT condemned the easement over the Florig property and constructed the access road to PECO's remaining property prior to entry onto PECO's property.  The common pleas court found that the fair market value at the time of the August 21, 1972 taking was affected by the plan for the access road.  The common pleas court further determined that the access road was a special benefit to PECO's property within the meaning of Section 606 of the Code, 26 P.S. § 1–606.[6]

**4.**  The common pleas court, in noting its function under Section 517 of the Code, 26 P.S. § 1–517 stated:

Our function is to settle the Report by assessing the legality thereof, not to settle all questions of law prior to trial de novo.  *Kellman Trust Fund v. PennDOT,* 24 Pa.Cmwlth. 102, 354 A.2d 583 (1976).  The General Assembly hoped to expedite resolution of cases by this means, thus avoiding trial.  Id., 24 Pa.Cmwlth. at 111, 354 A.2d at 591.  That trial seems certain here, since the parties have appealed on the merits as to damages, does not disturb our mandate to answer questions of law raised by the appeal from the decision of the Board.  *PennDOT v. Fackler,* 100 Pa.Cmwlth. 546, 552, 515 A.2d 102, 105 (1986).

Common pleas court opinion, December 4, 1989, at 3–4.

**5.**  Section 602(a) of the Code provides:

Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this Code.

26 P.S. § 1–602(a).

**6.**  Section 606 of the Code provides:

■ With respect to DOT's appeal, the common pleas court reasoned that PECO was entitled to the Board of View's award of $312,700.00 in moving expenses pursuant to section 601-A of the Code, 26 P.S. § 1-601A, involving the overhead transmission equipment which PECO has not yet moved. The common pleas court cites the Supreme Court's decision in *Douglas Waste Paper v. Redevelopment Authority*, 481 Pa. 634, 393 A.2d 341 (1978), for the proposition that a court may allow a jury to determine dislocation damages prior to an actual move in the interests of judicial economy and a fair adjudication of the parties' rights. Thus the common pleas court determined that the Board of View did not err by awarding moving expenses, but modified the Board of View's Report to condition payment on PECO's actual move. Appellate review of a common pleas court's affirmance of a board of view is limited to ascertaining the validity of the court's jurisdiction, the regularity of the proceedings, questions of law and whether there has been an abuse of discretion. *Bitting v. Beaston*, 120 Pa. Commonwealth Ct. 448, 549 A.2d 611 (1988).

■ We will first address PECO's appeal. PECO contends that the common pleas court erred as a matter of law in affirming the Board of View's consideration of the access road, which had not been acquired at the time of the taking, in a post-taking assessment of the remaining PECO property. Specifically, PECO argues that compensation in a condemnation case is to be determined in accordance with Section 602(a) of the Code, 26 P.S. § 602(a), that being the difference between the fair market value of the property

> In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken. Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value. Special benefits to the remaining property shall in no event exceed the total damages except in such cases where the condemnor is authorized under existing law to make special assessments for benefits.
> 26 P.S. § 1-606.

immediately before the condemnation and the fair market value of the property immediately after the condemnation. PECO relies on *Frontage Inc. v. Allegheny County*, 400 Pa. 249, 162 A.2d 1 (1960), for the proposition that a fundamental principle of the law of eminent domain is that the market value is determined upon the date of the taking. *Id.*, 400 Pa. at 255, 162 A.2d at 4. Although *Frontage* was decided prior to the enactment of the Code in 1964, our Supreme Court has subsequently reaffirmed the rule that fair market value for damages is determined as of the date of condemnation. *Redevelopment Authority of Oil City v. Woodring*, 498 Pa. 180, 188 n. 8, 445 A.2d 724, 728 n. 8 (1982).

In *Frontage*, Allegheny County (condemnor) condemned certain property owned by Frontage, Inc. (condemnee) for the purposes of constructing airport terminal facilities at the Greater Pittsburgh Airport. This property had approximately 1,000 feet of frontage on the Airport Parkway. In August 1955, the Governor and Secretary of Highways indicated that they intended to designate the Airport Parkway as a limited access highway. This would have cut off access to the Airport Parkway from condemnee's property. However, at the date of the taking, the date of trial, and even at the time the appeal was decided, the Airport Parkway had not yet been designated a limited access highway. Nonetheless, condemnor alleged that it was entitled to argue that the property was diminished in value because of the threat of condemnation.

Our Supreme Court rejected condemnor's contention and stated:

> That the Parkway has not been declared a limited access highway to this day is the strongest indication that statements by public officials do not always bear fruition. Moreover, the fundamental principle of the law of eminent domain is that market value is determined upon the date of the taking. Whether some public official will, at some future time, carry out his previously stated intention to limit a property owner's freedom to use his land

can have absolutely no effect on a condemning body's duty to adequately compensate the owner for a complete taking of his land.

*Frontage,* 400 Pa. at 255, 162 A.2d at 4.

The common pleas court distinguished *Frontage* on the basis that the condemnation and the proposed limiting of access in *Frontage* were unrelated actions not dependent upon each other which would render condemnor's theory remote and speculative. In contrast, the common pleas court reasoned that the access road in the present case was planned from the beginning and that PECO has in fact received the benefit. As a result, the common pleas court concluded that the benefit provided by the access road was neither speculative nor remote.[7]

Although the plan for the access road may have been less speculative and remote than the plan for the limited access highway in *Frontage,* no condemnation for the access road occurred before August 21, 1972, the date of DOT's taking of PECO's property. Section 602(a) of the Code clearly states that post condemnation value of the remaining property is to be determined immediately after condemnation and, as interpreted and applied in *Frontage,* the fair market value is to be determined as of the date of the taking. The proper assessment of PECO's damages does not include consideration of the access subsequently provided by DOT's condemnation of the easement over Florig's property.

The next issue we must examine is whether the common pleas court erred in determining that the access road across the Florig property constituted a special benefit to the remaining PECO property within the meaning of Section 606 of the Code, 26 P.S. § 1–606. Under Section

7. DOT argued before the common pleas court that the easement over the Florig property was constructed to provide PECO with access to Ridge Pike. Notes of Testimony, February 23, 1988 (N.T.), at 17. Although the Commonwealth did not convey title to the highway easement over Florig's property to PECO (N.T. at 25–26), the access road does not appear to be necessary to the construction of the Blue Route, and in any event would have been subject to objection by Florig.

606, a determination of the fair market value of the remaining property after a partial taking may include special benefits to the remainder which result from the public improvement. These benefits may be off-set against the condemnee's damages. E. Schnitzer, *Pennsylvania Eminent Domain*, § 606–1.22 at 333 (1965). We initially note that the access road across Florig's property cannot be considered a "public improvement" insofar as its sole purpose is to benefit PECO rather than the general public. Second, we must note that the easement is located on a separate property owned by Florig and not PECO.

For purposes of awarding damages or off-setting benefits in eminent domain cases involving separate tracts, there must be a unity of ownership between the tracts, actual physical unity, and a unity of use. The fact that land is acquired in small parcels at different times does not necessarily render the parcels separate and independent. However, there must be a substantial unity of ownership. Nichols, *The Law of Eminent Domain*, Volume 4A, § 14.25 n. 2 at 14–637 to 638 (3rd ed. 1989), citing *Nantahala Power & Light Co. v. Moss*, 220 N.C. 200, 17 S.E.2d 10 (1941). In the present case, there is no unity of ownership between the Florig and PECO properties. Also, there is no record of a unity of use between the two properties prior to the Florig condemnation. Accordingly, damages awarded to PECO as compensation for the PECO taking may not be off-set by any special benefits to PECO resulting from the Florig condemnation.

We next address DOT's appeal. DOT contends the common pleas court erred in determining that the Board of View could award PECO $312,700.00 as moving expenses for personal property that PECO has not yet moved. DOT argues that pursuant to Section 601–A(a)(1) of the Code, 26 P.S. § 1–601A(a)(1), PECO must move the property and then produce receipts in order to obtain reimbursement for reasonable expenses. DOT relies on *Appeal of Union Electric Contracting Co.*, 39 Pa.Commonwealth Ct. 584, 396 A.2d 862 (1979), wherein this Court noted that once a

condemnee has in fact moved its special damages are calculated on the basis of actual reasonable expenses incurred and not on the basis of the condemnee's pre-removal projections of cost. *Id.*, 39 Pa.Commonwealth Ct. at 587, 396 A.2d at 864.

Conversely, PECO contends that although Section 601–A(a) of the Code, 26 P.S. § 601A(a), does provide that receipts for moving costs shall be *prima facie* evidence of reasonable moving expenses, the statute does not foreclose the possibility of determining the amount of reasonable moving expenses prior to actual movement of personal property. In support of its position, PECO relies on *Douglas Waste Paper v. Redevelopment Authority*, 481 Pa. 634, 393 A.2d 341 (1978). In *Douglas Waste*, our Supreme Court held that although the condemnees were not entitled to Section 601–A damages prior to the actual move, the common pleas court did not err in allowing the jury to determine dislocation damages before the move occurred.

Section 601–A of the Code provides in part:

(a) Any displaced person shall be reimbursed for reasonable expenses incurred in moving himself and his family and for the removal, transportation, and reinstallation of personal property.

> (1) Receipts therefor shall be prima facie evidence of incurred reasonable moving expenses.

> . . . .

(b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business or farm operation as follows:

> . . . .

> (e) Actual reasonable expenses in searching for a replacement business or farm determined in accordance with regulations promulgated under this act.

26 P.S. § 1–601A.

In *Douglas Waste*, the Supreme Court reviewed the condemnee's entitlement to business dislocation damages under

Section 601–A(b) rather than its entitlement to moving expenses under Section 601–A(a). In *Douglas Waste* the Court stated:

> The question here is whether Douglas, before surrendering the premises, is entitled to special dislocation damages under Section 601–A(b)(3) of the Code. Though we agree with the Commonwealth Court's determination that Douglas is not entitled to dislocation damages while in possession of the premises, we believe that the court of common pleas properly exercised its discretion in submitting the question of dislocation damages to the jury. We hold that, upon surrendering the condemned premises, Douglas is entitled to receive payment of the jury's award of $10,000 for dislocation damages.

*Douglas Waste*, 481 Pa. at 637, 393 A.2d at 343. Special dislocation damages under Section 601–A(b) are separate and distinct from moving expenses under Section 601–A(a).

Specifically, *Douglas Waste* involved an award of dislocation damages under Section 601–A(b)(3) which provides for "[a]ctual reasonable expenses in searching for a replacement business or farm in accordance with regulations promulgated under this act." Unlike the condemnee in *Douglas Waste*, PECO has not been displaced as a result of the taking. In the Comment following Section 601–A, the legislature stated: "Clause (3) of subsection (b) is based on former Section 609. The maximum and minimum figures have been increased. An alternative formula has been added, which was derived from the Federal act and Section 304.2(c) of the State Highway Law, added in 1968 and since repealed." This language indicates that business dislocation damages under Section 601–A(b)(3) are determined by statutory formula.[8]

On the other hand, moving expenses under Section 601–A(a) are to be determined after the move on the basis of actual receipts. Section 601–A(a) provides "[a]ny displaced person shall be *reimbursed* for reasonable expenses in-

---

**8.** The Section 601–A(b)(3) formula as applied to the facts in *Douglas Waste* is set forth at 481 Pa. at 636–637 n. 2, 393 A.2d at 342 n. 2.

curred in moving...." (Emphasis added.) "Reimburse" is defined as "to pay back (an equivalent for something taken, lost or expended)." Webster's Third New International Dictionary at 1914 (1986). In accordance with our reasoning in *Appeal of Union Electric*, 39 Pa.Commonwealth Ct. 584, 396 A.2d 862 (1979), we conclude that it is the intent of the legislature that moving expenses are to be calculated on the basis of actual reasonable expenses incurred after the move and not on the basis of pre-removal projections of cost.

The order of the common pleas court is reversed and this case is remanded for further proceedings with the direction that the jury shall not consider the Ridge Pike access road in determining the fair market value of the PECO property immediately after condemnation and that the jury shall not determine the amount of PECO's moving expenses prior to PECO's move of its personal property.

## ORDER

AND NOW, this 29th day of August, 1990, the order of the Court of Common Pleas of Philadelphia County is reversed and the case is remanded for further proceedings with the direction that the jury shall not consider the Ridge Pike access road in determining the fair market value of the PECO property immediately after condemnation and that the jury shall not determine the amount of PECO's moving expenses prior to PECO's move of its personal property.

Jurisdiction is relinquished.