**In re CONDEMNATION BY the COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, OF RIGHT OF WAY FOR STATE ROUTE 0079, SECTION W10, a Limited Access Highway, in the Township of Cecil.**

**Dennis Sluciak, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1998.
Decided March 18, 1999.

---

W. Patric Boyer, Washington, for appellant.

Walter F. Cameron, Jr., Pittsburgh, for appellee.

Before COLINS, President Judge, and McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J., and FLAHERTY, J.

McGINLEY, Judge.

Dennis Sluciak (Appellant) appeals from an order of the Court of Common Pleas of Washington County (trial court) that determined that his property was not landlocked as a result of a taking by the Commonwealth of Pennsylvania, Department of Transportation (Department).

Appellant's parents, Helen and Joseph Sluciak (Mr. and Mrs. Sluciak), purchased a sixty acre parcel of land in the Township of Cecil, Washington County, in April 1938. In August 1938, Mary Dagsher (Dagsher) and her husband purchased the adjoining property. Mr. and Mrs. Sluciak, who used the property as a farm, had frontage on Grudevich Road but used a driveway that cut across a "sliver" of property owned by Dagsher to access Grudevich Road (Sliver).[1] Appellant and Mr. and Mrs. Sluciak have maintained this access over the Sliver since 1938. Appellant and Mr. and Mrs. Sluciak attempted to purchase the Sliver at various times since 1938 without success. By the 1970's Appellant had established a landscaping business on the property and later headquartered an excavating business there. In 1985, Mrs. Sluciak subdivided the property and gave one parcel to Appellant and one parcel to her other son. Appellant and his brother and, before that, Appellant's father were solely responsible for the maintenance and repair of the Sliver.

Prior to the condemnation, Appellant's property had eight hundred linear feet of frontage on Grudevich Road, which Appellant could have used for access. On April 21, 1993, the Department filed a declaration of taking and acquired 12.190 acres of Appel-

lant's property including the eight hundred feet of frontage. Appellant received a copy of the declaration of taking, notice of condemnation and property plan. Appellant did not file preliminary objections to the declaration of taking. On May 17, 1993, Appellant signed an estimated just compensation application and subsequently received estimated just compensation of $145,000. The Department valued Appellant's property at $460,000 prior to the taking and at $315,000 after the taking.

On October 12, 1993, Appellant petitioned for appointment of a board of viewers (board). Before the board on March 24, 1994, Appellant testified that he had no legal access to his property after the taking and that the only access was over the Sliver, which he did not own. Appellant asserted that the property was landlocked by the condemnation, that the property was an assembled economic unit and the value after the taking was zero, resulting in damages greater than three million dollars.[2] On October 28, 1994, the board found that Appellant's property did not abut Grudevich Road but that he had either an irrevocable license or an easement by necessity over the Sliver. The board also found that the assembled economic unit doctrine was inapplicable and found damages in the amount of $145,000. On November 22, 1994, Appellant appealed to the trial court.

Subsequently, in February 1997, the Department condemned the Sliver and insured that Appellant has access to Grudevich Road. Both Appellant and the Department requested that the trial court schedule a hearing on the access issue. Originally, this request was denied as was the parties' request for reconsideration. However, on April 2, and April 14, 1997, the trial court held hearings to determine whether Appellant's property was landlocked.[3] At the hearing Appellant testi-

---

1. The "sliver" of property is approximately twelve feet long by twenty feet wide.

2. The Assembled Economic Unit Doctrine is a judicially created doctrine which determines whether machinery, equipment and fixtures constitute part of an assembled economic unit and therefore part of the condemned realty, entitling the owner to just compensation for their taking.

*Marx Stationery & Printing Co. v. Redevelopment Authority of the City of Philadelphia,* 675 A.2d 769 (Pa.Cmwlth.1996).

3. "Landlocked" is a term applied to a piece of land belonging to one person and surrounded by land belonging to other persons, so that it cannot be approached except over their land. Black's Law Dictionary 878 (6 th ed.1990).

fied that he, and his father previously, tried to purchase the Sliver but were unsuccessful. Notes of Testimony, April 2, 1997, (N.T.) at 23–24; Reproduced Record (R.R.) at 115–116. On cross-examination, Appellant stated that he spent "a couple of thousand dollars" improving the driveway over the Sliver with ripped up asphalt, reddog, stone and slag. N.T. at 43; R.R. at 135.

Jonathan G. Mounts (Mounts), a registered professional engineer and a professional land surveyor, testified on Appellant's behalf. Mounts performed a survey of Appellant's property on May 22, 1987. Mounts testified within a reasonable degree of engineering certainty that Appellant's property did not border Grudevich Road at the location of the Sliver and that Appellant had to travel over the Sliver to access Grudevich Road. N.T. at 73–74; R.R. at 165–166. Mounts also testified that a 1983 survey prepared by Englehart–Power Associates inaccurately indicated that Appellant's property bordered Grudevich Road at the Sliver in the vicinity of the driveway. Mounts concluded that Appellant's property was landlocked. N.T. at 78; R.R. at 170.

Mrs. Sluciak testified that Mr. and Mrs. Dagsher owned the Sliver and that she and her husband unsuccessfully attempted to purchase it, but that she and her family continued to cross the Sliver. N.T. at 94; R.R. at 186. David Johnson (Johnson), son-in-law of Mrs. Dagsher, testified that neither Appellant nor his family ever acquired the Sliver or an easement or a right-of-way. N.T. at 104; R.R. at 196. He testified that it was his understanding that Appellant had permission to cross the Sliver.[4]

Michael H. Dufalla (Dufalla), Department district engineer and formerly president of Englehart–Power Associates, testified for the Department that he surveyed Mrs. Sluciak's

property in 1983 and determined that the property abutted Grudevich Road and concluded Appellant owned the Sliver. N.T. at 112–113; R.R. at 204–205. Charles J. Brannigan, formerly Right-of-Way administrator for the Department, testified that the Department did not consider the property to be landlocked based on plans provided by Appellant. N.T. at 146; R.R. at 238. When Walter Cameron, the Department's attorney, attempted to question Brannigan concerning the Department's subsequent condemnation of the Sliver, Appellant's attorney, W. Patric Boyer, objected on the grounds that this Court in *Appeal of Philadelphia Electric Co.*, 135 Pa.Cmwlth. 100, 580 A.2d 424 (1990), *petition for allowance of appeal denied*, 528 Pa. 615, 596 A.2d 161 (1991) (*PECO* ) disallowed evidence of any subsequent condemnation. The trial court sustained the objection. N.T. at 148–149; R.R. at 240–241.

Sidney Mastrangelo, Cecil Township building inspector, testified that Appellant had submitted an application for a building permit which included a sketch of his property that indicated it abutted Grudevich Road at the Sliver. N.T. 161–164; R.R. at 252–255. David Hirschle, Cecil Township planning director, testified that a survey prepared by Pittsburgh Design and Equipment for Sluciak Contracting, Inc. indicated that Appellant's driveway over the Sliver abutted Grudevich Road. Finally, Francis Chiapetta, the appraiser retained by the Department, testified that he did not appraise Appellant's property as landlocked because of the access over the Sliver. N.T. at 174; R.R. at 266.

On April 10, 1997, the trial court determined that Appellant's property was not landlocked for the following reasons:

[T]he Commonwealth of Pennsylvania has cured the access issue. The various sur-

---

4. Appellant's attorney, W. Patric Boyer, questioned Johnson about Appellant crossing the Sliver:

Q: If Mr. Chiappetta would have asked you whether or not Mr. Sluciak had a right to cross your property, what would you have told him?
A: He had permission to cross, but they had no right-of-way.
Q: What was the nature of that permission?
A: As I said when I was up here before, years ago what I heard, he wanted to buy access and

Mr. Dagsher wouldn't give it to him. He wanted to trade land, and they never came to an agreement on the deal.
Q: Is it your understanding that Mrs. Dagsher and you gave Mr. Sluciak permission to cross it until such time as that permission were [sic] withdrawn?
A: That's right.
N.T. at 177–178; R.R. at 269–270.

veys and applications for building permits/subdivisions relative to Condemnor's realty show a discrepancy in the property line for his driveway onto Grudevich Road. The record reveals that from 1938 to the present date the Sluciak family has utilized the subject driveway for ingress and egress. In addition, the Sluciaks have been solely responsible for the maintenance, repair and snow removal of said driveway. Finally, Condemnor has transacted his business from the remaining tract of land uninterupted [sic].

Trial Court Order at 1; R.R. at 83.

■■■ Appellant contends that the trial court erroneously determined that he has the right to access Grudevich Road over the Sliver and that the trial court committed an error of law when it partially based this determination on the subsequent condemnation of the Sliver by the Department.[5]

In *PECO*, the Department filed a declaration of taking for approximately fifteen acres owned by the Philadelphia Electric Company (company) on August 21, 1972. The Department's taking resulted in the severing of the company's property thereby cutting off access between a service building and a headquarters for overhead transmission maintenance. Beginning in 1965, officials from the company and the Department had discussed the need for an access road and, on February 5, 1973, the Department filed a notice condemning a highway easement over a parcel of land in order to afford the company access. *PECO*, 580 A.2d at 425–426. A board of viewers awarded the company general damages and moving expenses totaling $2,724,370.00. *Id.*, 580 A.2d at 426. The Court of Common Pleas of Montgomery County confirmed but modified the award, and the parties appealed. The company argued that consideration of the access road, which was acquired six months after the taking of the company's property, was not relevant in evaluating the fair market value of the remaining property. This Court

agreed, noting that the plain language of Section 602(a) of the Eminent Domain Code (Code)[6] requires that post condemnation value is to be determined *immediately* after condemnation. *Id.*, 580 A.2d at 429. Section 602(a) of the Code states, "Just Compensation shall consist of the difference between the fair market value of the condemnee's entire property interest *immediately* before the condemnation and as affected thereby, and such other damages as are provided in this code." (emphasis added). 26 P.S. § 1–602(a). Under Section 606 of the Code, 26 P.S. § 1–606, "Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value." *See Department of Transportation v. Lutz,* 14 Pa.Cmwlth. 448, 322 A.2d 800 (1974).

■■■ Presently, the trial court sustained the objection of Appellant's counsel and excluded evidence of the Department's condemnation of the Sliver because it occurred after the taking of Appellant's property, in accordance with *PECO*. Notwithstanding the ruling to sustain the objection, the trial court went on to base its holding that Appellant's property was not landlocked, in part, because the Department's subsequent condemnation "cured" the access issue. By focusing on the subsequent condemnation, the trial court erroneously based its decision on evidence properly excluded for the purpose of after value. A court may not base an adjudication on matters which do not appear on the record. *Claremont Properties, Inc. v. Board of Supervisors of Middlesex Township,* 118 Pa. Cmwlth. 527, 546 A.2d 712 (1988).

However, the trial court did not base its decision solely on the Department's condemnation of the Sliver and this subsequently acquired access. The trial court also considered that Appellant and his family continually used and maintained the driveway since 1938. Appellant contends that the trial

---

5. Our review of a trial court decision in an eminent domain proceeding is limited to determining whether the trial court abused its discretion, committed an error of law, or whether its findings and conclusions are supported by sufficient evidence. *Appeal of Waite,* 163 Pa.Cmwlth.

283, 641 A.2d 25, *petition for allowance of appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994).

6. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–602(a).

court's conclusion is tantamount to declaring that Appellant had a right of access over the Sliver. Appellant denies that he acquired any interest in the Sliver, and asserts he has no easement or right-of-way and does not enjoy an irrevocable license.

[redacted] It is clear that Mrs. Dagsher, prior to its condemnation, never transferred any formal right of access over the Sliver to Appellant or his predecessors in title. Appellant, Mrs. Sluciak, and Johnson all testified that both Appellant and his father unsuccessfully attempted to purchase the Sliver. In order to establish an easement by prescription to use a roadway a party must prove an open, notorious, continuous, uninterrupted, adverse, and hostile use for twenty-one years. *Keefer v. Jones,* 467 Pa. 544, 359 A.2d 735 (1976). A party's use of a roadway is not adverse if the use is with the owner's permission. *Dulaney v. Rohanna Iron and Metal, Inc.*, 344 Pa.Super. 45, 495 A.2d 1389 (1985). Although Appellant maintains in his brief that his use of the Sliver was with Dagsher's permission, a review of the record reveals only vague references to Dagsher's alleged permission in Johnson's testimony, and the trial court never directly addressed the issue.

[redacted] A license is a personal and initially revocable privilege to perform an act or series of acts on the land of another. *Hennebont Co. v. Kroger Co.,* 221 Pa.Super. 65, 289 A.2d 229 (1972).

> A license to use another's land will become irrevocable where the licensee, in reliance upon it, treats his land in a way he would not have treated it except for the license, that is, by spending money for such changes as would prevent his being restored to his original position.

*Pennsylvania Game Commission v. Bowman,* 81 Pa.Cmwlth. 381, 474 A.2d 383, 385 (1984), quoting, *Bieber v. Zellner,* 421 Pa. 444, 220 A.2d 17 (1966).

Appellant testified that he made considerable improvements to his property involving the expenditure of over one million dollars. However, there is nothing in the record to clearly indicate whether Appellant made these improvements in reliance upon any permission by Dagsher to traverse the Sliver and access Grudevich Road.

The trial court failed to make any findings of fact concerning the type of interest or permission Appellant had, if any, to traverse the Sliver. Therefore, we are incapable of reviewing the legal status of Appellant's access, at the time of the taking.

We do not agree with the Department's contention that Mrs. Sluciak created an easement either expressly or by implication when she conveyed the property to her sons merely because her subdivision plan indicated that her property included the Sliver. Surveys by both the Department and Appellant indicated that this property did not belong to Appellant or his parents. Nor did Appellant create a right of access over the Sliver by filing a subdivision plan with an inaccurate boundary.

[redacted] The Department contends that Appellant waived any right to claim a total taking of his property because he failed to file preliminary objections to the declaration of taking. Section 406 of the Code, 26 P.S. § 1–406, provides in pertinent part:

> (a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property, unless the same has been previously adjudicated; (2) the sufficiency of the security ... (3) any other procedure followed by the condemnor or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

The Department cites *West Whiteland Associates v. Department of Transportation,* 690 A.2d 1266 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 550 Pa. 714, 705 A.2d 1313 (1997) for support. In *West Whiteland,* this Court held that the condemnee waived the right to contest a description of the condemned property set forth in the plan when the condemnee failed to preliminarily object to the description set forth in the plot plan.

Here, Appellant does not contest the plot plan. In fact, as the trial court stated when it refused to dismiss the case, the plot plan reflects that Appellant must cross the Sliver to access Grudevich Road. Appellant did not challenge the power of the Department to take his property, the security or any Department procedure. Similarly, Appellant did not challenge the declaration of taking itself or that it was procedurally deficient. *See Appeal of McKonly*, 152 Pa.Cmwlth. 211, 618 A.2d 1169 (1992). Appellant asserts his property was landlocked by the condemnation and that the value after the taking was zero. Appellant was not required to file preliminary objections under the Code.

Accordingly, we reverse because the trial court improperly concluded the subsequent condemnation of the Sliver "cured" the access issue. We remand to the trial court for a determination whether Appellant had any interest, be it right-of-way, easement, license or irrevocable license over the Sliver and the effect of that interest, if any, on whether Appellant's property was landlocked when determining the after value.

## ORDER

AND NOW, this 18th day of March, 1999, we reverse because the Court of Common Pleas of Washington County improperly concluded the subsequent condemnation of the Sliver "cured" the access issue. We remand to the Court of Common Pleas of Washington County for a determination whether Dennis Sluciak had any interest, be it right-of-way, easement, license or irrevocable license over the Sliver and the effect of that interest, if any, on whether Dennis Sluciak's property was landlocked when determining after value of the property.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's decision that Dennis Sluciak (Property Owner) is entitled to have his property permanently valued as landlocked as a result of the Department of Transportation's (PennDOT) declaration of taking that legally, though not actually, inadvertently landlocked his property. When the initial declaration of taking was filed, Property Owner never filed preliminary objections to this declaration of taking challenging the scope of the take and, consequently, waived the issue of whether his property was landlocked. Even if Property Owner was not required to file the preliminary objections because PennDOT later cured the access problem, I would hold that Property Owner is not entitled to damages as if the property were landlocked forever when it is not.

In April 1938, Property Owner's parents purchased a 60–acre parcel of land in Cecil Township, Washington County. The adjoining lot was owned by Mary Dagsher (Dagsher). Although approximately 800 feet of Property Owner's parcel abutted Grudevich Road, Property Owner and his parents used a driveway that cut across a "sliver" of property owned by Dagsher, with her permission, to access this main road. If Dagsher ever withdrew her permission, Property Owner could have accessed his property by way of this frontage. At various times since 1938, Property Owner's parents attempted to purchase the sliver from Dagsher without success. Moreover, Property Owner and his parents were solely responsible for the maintenance and repair of this sliver.

On April 21, 1993, PennDOT filed a declaration of taking acquiring 12.190 acres of Property Owner's parcel, including the 800 feet of linear frontage that abutted Grudevich Road. Property Owner did not file preliminary objections to this declaration of taking. In May 1993, he signed an estimated just compensation application receiving $145,000 [1] in just compensation for PennDOT's condemnation of his property. In October 1993, Property Owner filed a Petition for Appointment of a Board of Viewers (Board) alleging that PennDOT had totally taken his property because he was landlocked as a result of PennDOT's taking and had no legal access to Grudevich Road from his property, except over the sliver which he

---

1. PennDOT estimated Property Owner's property to be worth $460,000 before the taking and $315,000 after the taking.

did not own.[2] Although finding that Property Owner's property did not abut Grudevich Road, the Board concluded that Property Owner had an irrevocable license or an easement by necessity over the sliver. It concluded that his property was not landlocked because he had continued use of the sliver to access Grudevich Road and awarded him damages in the amount of $145,000. Property Owner appealed to the trial court, but before a hearing was held, PennDOT condemned the sliver to ensure that Property Owner would have access to Grudevich Road. At the hearing on the condemnation of both pieces of property, the trial court found that Property Owner's property was not landlocked, primarily relying on the fact that PennDOT had "cured the access issue" by condemning the sliver.

On appeal to this Court, the majority agrees with Property Owner that the trial court erred in relying on PennDOT's subsequent condemnation of the sliver in determining that his property was not landlocked, but in doing so, dismisses PennDOT's argument that Property Owner did not file preliminary objections[3] to the first condemnation based on our holding in *West Whiteland Associates v. Department of Transportation,* 690 A.2d 1266 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 714, 705 A.2d 1313 (1997). The majority distinguishes that case from the facts presented here because, unlike the landowner in *West Whiteland,* Property Owner did not contest the description of the property plan, challenge the power of PennDOT to take his property, the security or any PennDOT procedure, and, therefore, was not precluded from raising any argument that his property was landlocked despite not filing preliminary objections. However, while the particular issue in

*West Whiteland* was whether the landowner waived his right to contest the description of his condemned property, we stated the following as a general principle:

> Preliminary objections under Section 406 of the Code[1] are intended as a procedure to resolve expeditiously all legal and factual challenges to the declaration of taking before the parties move to the second distinct proceeding of qualifying damages. (Footnote and citation omitted).

*Id.* at 1268.

That being the case, after Property Owner was served with PennDOT's declaration of taking, he was required to file the preliminary objections alleging that the scope of PennDOT's take was improper and that the remaining portion of his property was also taken or the issue was waived. *Department of Transportation v. Fackler,* 100 Pa.Cmwlth. 546, 515 A.2d 102 (1986). In *Department of Transportation v. Greenfield Township– Property Owners,* 135 Pa.Cmwlth. 113, 582 A.2d 41 (1990), *petition for allowance of appeal denied,* 527 Pa. 669, 593 A.2d 844 (1991), PennDOT alleged that the landowners were precluded from raising a *de facto* taking when they had failed to file preliminary objections to the taking of their property. While we held that the landowners were not precluded from arguing that their property was landlocked, even though they had not filed preliminary objections to the take, we did so because they were not aware nor could they have reasonably become aware that their property was landlocked at the time the declaration of taking was filed. Unlike in *Greenfield Township,* Property Owner believed his property was landlocked at the time of the first taking and made that allegation when he petitioned for the appointment

---

2. Property Owner asserted that the property was part of an assembled economic unit and the value after the taking was $0, resulting in damages exceeding $3 million. The Board rejected his argument and found the doctrine inapplicable.

3. Preliminary objections are governed by Section 406(a) Eminent Domain Code (Code). Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–406(a). Section 406(a) of the Eminent Domain Code provides in relevant part:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.... Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

of the Board. Because Property Owner believed that his property was landlocked immediately after the first condemnation but failed to file preliminary objections to the taking, he was precluded from arguing that his property was landlocked.

Even assuming that Property Owner was not required to file preliminary objections to PennDOT's declaration of taking, I would hold that Property Owner is not entitled to an after value of the property as if it were landlocked. To do so would allow him to recover damages based on the value of the property as if it is landlocked when the lack of access was cured as soon as PennDOT provided him with, admittedly, adequate access to Grudevich Road.

In arriving at its conclusion, the majority relies on our decision in *Appeal of Philadelphia Elec. Co. (PECO)*, 135 Pa.Cmwlth. 100, 580 A.2d 424 (1990), *petition for allowance of appeal denied*, 528 Pa. 615, 596 A.2d 161 (1991). In that case, we held that the property owner's damages for condemnation of a portion of its property by PennDOT was measured at the time of the taking and could not be cured with access to the property through a subsequent condemnation of an easement over another parcel, even though the subsequent condemnation was included in an overall improvement plan and was referenced in the declaration of taking of PECO's property. The difference between this case and *PECO* is that in *PECO*, PennDOT realized that the property owner would not have access at the time of its taking, but in this case, PennDOT's taking leaving the parcel landlocked was inadvertent.

Although I would reverse *PECO* because, even though compensation should normally be based on what is taken, that principle should not be so inflexible as to not take into consideration what is referenced in the declaration of taking, and I do not believe it necessary to do so because *PECO* is not controlling. In this case, PennDOT inadvertently denied access which I believe is a distinction that makes the landlocking here more akin to a temporary taking that occurs when the government "inadvertently" imposes a regulation or takes an action that results in the temporary loss of the use of the property. For example, if a PennDOT crew dumped a load of chip stone on a property, the property owner may have a cause of action for a temporary take for the time the stone was on the property, but could not claim a total take. *See, e.g., Elser v. Commonwealth, Department of Transportation*, 651 A.2d 567 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 650, 659 A.2d 988 (1995). Similarly, in a regulatory *de facto* taking, where property owner is claiming that the effect of the regulation is to deprive it of the use of its property, compensation is only required to be paid for a limited period until the regulation is struck down or the date when the government entity either rescinds or otherwise revokes or amends the regulation. Robert J. Hopperton, *Standards of Judicial Review in Supreme Court Land Use Opinions: A Taxonomy, An Analytical Framework, and A Synthesis*, 51 Wash. U.J. Urb. & Contemp. L. 163 (1997).

In this case, when PennDOT realized that as a result of its condemnation, the property had become landlocked, PennDOT cured its mistake by providing access. Because PennDOT cured the effect of its earlier condemnation, Property Owner is not entitled to just compensation for the value of his property without access to Grudevich Road when, in fact, he has access to Grudevich Road through the same route that he has actually used since he owned the property. What Property Owner may be entitled to, because he was temporally denied legal access, if not in reality, are damages for that period of time that the property was without legal access prior to PennDOT's acquisition of access. *Odhner v. Township of Woodward*, 143 Pa.Cmwlth. 450, 599 A.2d 276, 279 (1991) ("[w]e recognize that a landowner, subject to a temporary taking, can be entitled to compensation for the deprivation of the use of the property.")

The majority, by allowing recovery for a *de facto* taking, which alleged that property was landlocked even though the issue was not raised in the original declaration of taking proceeding, is permitting the Property Owner to receive damages because he does not have access to Grudevich Road when he now

has the same access that he always had. While the Eminent Domain Code intends for property owners to be compensated for damages that they incur as a result of governmental action, its purpose was not to permit a property owner to receive potentially hundreds of thousands of dollars in damages because his property became landlocked when his property, in reality, is not landlocked. For the foregoing reasons, I respectfully dissent.

Judge SMITH joins in this dissent.